BRIAN W. CAIL AND WIFE, DANA S. CAIL; AND JERRY M. DEAL, PLAINTIFFS v. DR. ROBERT A. CERWIN; CHRISTINA CERWIN; JOHN M. DUNLOW, SUBSTITUTE TRUSTEE; CANUSA MORTGAGE CORPORATION; AND D.B. LANCASTER, DEFENDANTS

No. COA06-304

(Filed 7 August 2007)

**1. Civil Procedure; Jurisdiction— summary judgment— same legal issues for first and second motion for summary judgment**

The trial court's order of 3 March 2005 is vacated to the extent that it overrules the 27 February 2004 order with respect to plaintiffs' first, second, third, fourth, and sixth claims for relief and defendant Christina Cerwin's counterclaim, because: (1) only when the legal issues differ between the first motion for summary judgment and a subsequent motion may a trial court hear and rule on the subsequent motion; and (2) the key legal issues once again were agency, both apparent and actual, and the applicability of the Uniform Commercial Code. Although it was permissible for Judge Cashwell to grant summary judgment against plaintiffs on the fifth issue of unfair or deceptive trade practices since Judge Titus neither granted nor denied that motion for summary judgment, the remainder of Judge Titus' judgment is reinstated.

**2. Appeal and Error— appealability—interlocutory order— denial of motion for summary judgment**

Although defendants appeal from and assign error to Judge Titus' order denying defendant Christina Cerwin's motion for summary judgment, this appeal is dismissed, because: (1) the denial of a motion for summary judgment is interlocutory and not immediately appealable unless it affects a substantial right; and

**CAIL v. CERWIN**

[185 N.C. App. 176 (2007)]

(2) defendants failed to articulate or argue any substantial right affected by the denial of defendant's motion and by the trial court's permitting the matter to proceed to the jury.

**3. Costs— no statutory basis—pertinent portion of summary judgment order vacated**

The trial court erred in part by taxing defendant Christina Cerwin with certain costs, because: (1) there was no statutory basis for awarding $6,684 for expenses incurred in defending against the foreclosure proceeding filed by defendant; (2) the $500 civil penalty awarded under N.C.G.S. § 45-36.3 to the Cails and Deal based on defendant's failure to cancel the Deal deed was improper when the pertinent portion of Judge Cashwell's summary judgment order was vacated and Judge Titus ruled that defendants' alleged violation of N.C.G.S. § 45-36.3 was an issue for the jury; and (3) N.C.G.S. § 45-36.3 cannot support the court's award of $25,200 to plaintiffs when the pertinent portion of Judge Cashwell's summary judgment order was vacated.

**4. Discovery— improper denial of admissions—sanctions— attorney fees**

The trial court did not abuse its discretion by taxing defendant Christina Cerwin with costs of $25,200 under N.C.G.S. § 1A-1, Rule 37(c), because: (1) defendants failed to request that the trial court make findings with respect to the four exceptions under Rule 37(c); (2) Judge Cashwell listed the specific requests for admissions that defendants improperly denied, and noted that plaintiffs ultimately proved those matters; and (3) Judge Cashwell provided an itemized list of attorney fees attributable to the failure to admit, and concluded that attorney fees were reasonable.

Appeal by defendants Cerwin from order entered 27 February 2004 by Judge Ken Titus and orders entered 3 March 2005 and 1 July 2005 by Judge Narley L. Cashwell in Granville County Superior Court. Heard in the Court of Appeals 6 February 2007.

*Boxley, Bolton, Garber & Haywood, L.L.P., by Ronald H. Garber, for plaintiff-appellees.*

*J. Michael Weeks, P.A., by J. Michael Weeks, for Robert A. Cerwin, M.D. and Christina Cerwin, defendant-appellants.*

JACKSON, Judge.

On 6 June 1995, Robert A. Cerwin ("defendant Robert Cerwin") entered into an agreement with Canusa Mortgage Corporation ("Canusa") for the purpose of investing in residential mortgage loans. D.B. Lancaster ("Lancaster") was the president of Canusa, a licensed broker engaged in originating long-term mortgage loans.

Defendant Robert Cerwin also brought his daughter, Christina Cerwin ("defendant Christina Cerwin") (collectively, "defendants"), into the business dealings with Canusa. She had no direct contact with Canusa and relied upon her father to make arrangements with Canusa for the investment of her money and collection of payments due to her. Defendant Christina Cerwin ultimately invested approximately $357,646.00 with Canusa, and as of 15 May 2002, defendant Robert Cerwin had made loans in the amount of $993,543.50 through Canusa.

On 20 June 1997, Jerry M. Deal ("Deal") obtained from Canusa a construction loan in the amount of $45,000.00 ("the Deal loan"). From applying for the loan to making payments, Deal worked solely with Canusa and its employees. Deal signed a promissory note ("the Deal Note") and a deed of trust ("the Deal Deed"), naming Canusa as the beneficiary and granting Canusa a lien on two lots owned by Deal. On 27 June 1997, defendant Robert Cerwin delivered $45,000.00 of defendant Christina Cerwin's money to Canusa for the initial funding of the Deal loan. That same day, Canusa assigned the Deal Note and Deal Deed to defendant Christina Cerwin, and the assignment was recorded.

Following the initial loan of $45,000.00, defendant Christina Cerwin made additional advances on the Deal Note in July, October, and November 1997. The funds for these loans were delivered to Canusa by defendant Robert Cerwin and disbursed by Canusa to Deal. Lancaster delivered to defendant Robert Cerwin a monthly check drawn on Canusa's bank account payable to defendant Christina Cerwin for payments on the Deal Note.

In May 2000, Deal refinanced his mortgage and hired Kathryn S. Drake ("Drake") to represent him. Drake requested a payoff figure from Canusa to satisfy Deal's mortgage. Canusa sent Drake a letter quoting the payoff figure as $64,291.00 to be mailed to the Canusa office. After Deal produced a series of cancelled checks reflecting certain payments that had not been credited by Canusa, Canusa sent a letter with a revised payoff amount of $59,162.50. On 19 May 2000,

the refinance loan closed, and Drake mailed a check in the amount of $59,162.50 to Canusa at the Canusa office, requesting that the Deal Note and Deal Deed be forwarded to her and marked "Paid in Full." In 2001, Deal sold his house to Brian and Dana Cail ("the Cails").

Amanda S. Stadler ("Stadler"), the Canusa employee responsible for calculating the payoff figure, received Deal's payoff check for the Deal loan and, after Lancaster approved it, marked the account "Paid in Full" as of 25 May 2000. However, Canusa did not: (1) pay the funds received to defendant Christina Cerwin; (2) notify defendant Christina Cerwin that the Deal Note had been paid in full; or (3) request that defendant Christina Cerwin cancel the Deal Note. Rather, Lancaster continued to make payments on the Deal loan to the Cerwins as if the loan had not been paid off.

Around 1 March 2002, the Cerwins calculated the remaining balance on the Deal Note as approximately $43,500.00. In May 2002, after a check from Canusa was returned for insufficient funds, the Cerwins investigated Lancaster and Canusa. Lancaster ultimately was indicted for obtaining property by false pretenses and was sentenced to prison.

On 23 September 2002, Canusa was placed in receivership by court order, and on 2 October 2002, defendant Christina Cerwin instituted a foreclosure action to sell the property in the Deal Note. On 8 January 2003, the Cails and Deal (collectively, "plaintiffs") filed a complaint against defendants, Lancaster, Canusa, and Canusa's substitute trustee, seeking: (1) a declaratory judgment determining the status of the Deal Note and Deal Deed; (2) an injunction staying the foreclosure; (3) a civil penalty and attorneys' fees for failure to cancel the Deal Note and Deal Deed pursuant to North Carolina General Statutes, section 45-36.3; (4) damages and attorney's fees for false representation of the alleged debt in violation of Title 15, section 1692(e) of the United States Code; and (5) damages and attorneys' fees for unfair and deceptive trade practices.

On 12 February 2003, the trial court entered a preliminary injunction staying the foreclosure. On 6 March 2003, plaintiffs amended their complaint to demand recovery of a civil penalty of up to $1,000.00 for defendants' failure to cancel the Deal Deed. Defendant Christina Cerwin filed a counterclaim against plaintiffs, seeking: (1) a declaratory judgment determining the balance due on the Deal Note; (2) judgment for the counterclaim; (3) dissolution of the preliminary injunction staying the foreclosure; and (4) the costs of the action.

On 4 December 2003, defendant Christina Cerwin filed a motion for summary judgment, asking the court to: (1) dismiss all claims alleged in plaintiffs' amended complaint; and (2) grant the relief demanded in her counterclaim. Plaintiffs filed a response to the motion, and on 15 December 2003, Superior Court Judge Ken Titus ("Judge Titus") heard defendants' motion for summary judgment. By order entered 19 February 2004, Judge Titus denied the motion, except as to plaintiffs' claim for unfair and deceptive trade practices, for which the court neither granted nor denied summary judgment.

On 21 January 2005, plaintiffs filed a motion for summary judgment, and on 28 January 2005, defendants filed a response to the motion. On 31 January 2005, Superior Court Judge Narley Cashwell ("Judge Cashwell") heard the motion, and on 3 March 2005, Judge Cashwell entered an order: (1) granting judgment for plaintiffs with respect to their request for a declaratory judgment determining the status of the Deal Note and Deal Deed; (2) granting judgment for plaintiffs with respect to their request for a temporary restraining order, preliminary injunction, and permanent injunction staying the foreclosure of the Deal Deed; (3) granting judgment against plaintiffs with respect to their claim that defendants falsely represented the debt; (4) granting judgment against plaintiffs with respect to their claim for unfair and deceptive trade practices; (5) reserving judgment on plaintiffs' demand for a civil penalty and attorneys' fees for defendants' failure to cancel the Deal Note and Deal Deed; (6) reserving judgment on plaintiffs' demand for a civil penalty against defendants for their failure to cancel the Deal Note and Deal Deed; and (7) granting judgment against defendant Christina Cerwin on her counterclaim.

On 21 April 2005, plaintiffs filed a motion to tax costs to the Cerwins, and by order entered 1 July 2005, Judge Cashwell ordered that: (1) plaintiffs recover from defendant Christina Cerwin $6,684.90 for the expenses incurred in defending the foreclosure proceedings;[1] (2) plaintiffs recover from defendant Christina Cerwin $25,200.00 for refusing to cancel the Deal Deed, or, in the alternative, as sanctions for failure to admit pursuant to Rule 37(c) of the Rules of Civil Procedure; and (3) both the Cails and Deal recover from defendant Christina Cerwin a civil penalty of $500.00 pursuant to North Carolina General Statutes, section 45-36.3. Thereafter, defendants filed notice

---

1. Although defendants contend in their brief that an alternative basis for the $6,684.90 award was failure to admit pursuant to Rule 37(c) of the Rules of Civil Procedure, there is no such finding or conclusion in the order.

of appeal from Judge Titus' order denying their motion for summary judgment, Judge Cashwell's order granting summary judgment in part to plaintiffs, and Judge Cashwell's order taxing costs to defendant Christina Cerwin.

On appeal, defendants contend that the trial court erred by: (1) denying defendant Christina Cerwin's motion for summary judgment; (2) ordering defendant Christina Cerwin to pay attorneys' fees and expenses pursuant to Rule 37(c) of the North Carolina Rules of Civil Procedure; (3) assessing defendant Christina Cerwin with costs that are not listed in North Carolina General Statutes, section 7A-305; and (4) assessing defendant Christina Cerwin with attorneys' fees, costs, and civil penalties pursuant to North Carolina General Statutes, section 45-36.3.

Preliminarily, we must address the relationship between Judge Titus' order on defendant Christina Cerwin's motion for summary judgment and Judge Cashwell's subsequent order on plaintiffs' motion for summary judgment. Although not raised by the parties, the issue relates to jurisdiction, and jurisdictional issues " 'can be raised at any time, even for the first time on appeal and even by a court *sua sponte.*' " *Brown v. Brown*, 171 N.C. App. 358, 362, 615 S.E.2d 39, 41 (2005) (quoting *Hedgepeth v. N.C. Div. of Servs. for the Blind*, 142 N.C. App. 338, 341, 543 S.E.2d 169, 171 (2001)).

It is well-established "that no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). Although an exception has been established for orders that do not resolve an issue but direct some further proceeding prior to a final ruling, "when the [trial] judge rules as a matter of law, not acting in his discretion, the ruling finally determines the rights of the parties unless reversed upon appellate review." *Carr v. Great Lakes Carbon Corp.*, 49 N.C. App. 631, 633, 272 S.E.2d 374, 376 (1980), *disc. rev. denied*, 302 N.C. 217, 276 S.E.2d 914 (1981).

In the context of summary judgment, this Court has held that "[i]n the granting or denial of a motion for summary judgment, the court is ruling as a matter of law . . . Such a ruling is determinative as to the issue presented." *Id.* (internal citations omitted). Thus, although "[t]here may be more than one motion for summary judgment in a

lawsuit, . . . *the second motion will be appropriate only if it presents legal issues that are different from those raised in the earlier motion.*" *Huffaker v. Holley,* 111 N.C. App. 914, 915, 433 S.E.2d 474, 475 (1993) (emphasis added) (internal citations omitted).[2] Additionally, it is immaterial whether a different party brings the second motion for summary judgment, *see, e.g., Furr v. Carmichael,* 82 N.C. App. 634, 637, 347 S.E.2d 481, 483-84 (1986), because, as this Court has explained,

> [Rule] 56 [of the North Carolina Rules of Civil Procedure] contemplate[s] a single hearing on a motion for summary judgment involving the same case on the same legal issues. Rule 56(c) provides that judgment shall be rendered if pleadings and other supporting materials show that there is no genuine issue as to any material fact and *that any party is entitled to judgment as a matter of law.* Rule 56(f) permits the opposing party to move for additional time to obtain affidavits or complete discovery essential to justify his opposition. . . . Generally, motions for summary judgment should not be decided until all parties are prepared to present their contentions on all the issues raised and determinable under Rule 56.

*Am. Travel Corp. v. Cent. Carolina Bank & Trust Co.,* 57 N.C. App. 437, 441, 291 S.E.2d 892, 895 (emphasis in original) (internal citations and alteration omitted), *disc. rev. denied,* 306 N.C. 555, 294 S.E.2d 369 (1982). In sum, "where one judge denies a motion for summary judgment, another judge may not reconsider . . . and grant summary judgment on the same issue." *Whitley's Elec. Serv., Inc. v. Walston,* 105 N.C. App. 609, 611, 414 S.E.2d 47, 48 (1992).

In the case *sub judice,* defendant Christina Cerwin filed a motion for summary judgment on 4 December 2003, alleging that there was no genuine issue as to any material fact and requesting that the trial court grant judgment: (1) against plaintiffs on all of the claims alleged in their complaint; and (2) for defendant Christina Cerwin on her counterclaim. At the hearing on the motion, defense counsel contended that there were four issues: (1) "is Christina Cerwin a holder in due course of the . . . Deal note" pursuant to the Uniform

---

2. *Compare Fox v. Green,* 161 N.C. App. 460, 462-63, 588 S.E.2d 899, 902 (2003) (different issues), *with Hastings v. Seegars Fence Co.,* 128 N.C. App. 166, 169, 493 S.E.2d 782, 784 (1997) (same issues). *See also* Thomas L. Fowler & Thomas P. Davis, *Reconsideration of Interlocutory Orders: A Critical Reassessment of* Calloway v. Ford Motor Co. *and Whether One Judge May Overrule Another,* 78 N.C. L. Rev. 1797, 1856 n.244 (2000).

Commercial Code ("UCC") as codified in North Carolina; (2) "on May 24th, 2000, when the check was delivered to Canusa to pay the Deal note, did Mr. Deal have constructive notice that Christina Cerwin was the holder of the Deal note"; (3) did Deal's 24 May 2000 payment to Canusa discharge his obligation on the Deal Note; and (4) "what is the balance due and payable on the Deal note." Counsel for plaintiffs, on the other hand, contended that: (1) "[t]he big question in this case is agency," as opposed to the applicability of the UCC provisions governing negotiable instruments; and (2) "[i]t is a case for the jury, if it is not a case for summary judgment for [plaintiffs]."

After hearing argument from the parties, Judge Titus stated, "I am not going to grant summary judgment because there is a significant agency issue here. The extent of the agency is really the question. . . . *This is a question of fact that is to be determined by the jury.*" (Emphasis added). Judge Titus, however, expressly reserved ruling on plaintiffs' fifth claim for relief for unfair and deceptive trade practices because he did not believe there had been adequate time for discovery:

> What I will do is not rule on the unfair and deceptive trade practices claim in terms of summary judgment. Leave that outstanding because I think it is appropriate for that to be heard prior to a jury trial. It will confuse everyone if that goes forward and if there are no facts that are sufficient to push it forward at that point.

Therefore, on 27 February 2004, Judge Titus entered an order agreeing with plaintiffs' contention that "[i]t is a case for the jury" but disagreeing with plaintiffs' contention that summary judgment should be entered in favor of plaintiffs. The trial court's order denied defendant Christina Cerwin's motion for summary judgment except as to the Fifth Claim for Relief, stating, "[T]he Court[] neither grants nor denies the Motion for Summary Judgment as to the Fifth Claim for Relief."

Approximately one year later, on 21 January 2005, plaintiffs filed a motion for summary judgment, and Judge Cashwell heard the motion on 31 January 2005. Although additional evidence was before the court[3]—particularly with respect to the alleged agency relation-

---

3. The evidence before Judge Titus consisted of seven affidavits, four exhibits, the transcripts from two related criminal matters, and various discovery documents. The evidence before Judge Cashwell consisted of the evidence before Judge Titus plus twelve additional affidavits, transcripts from six depositions, a bench brief submitted by defendant Christina Cerwin, and additional discovery documents. In *Carr*, 49 N.C.

ship between Canusa and the Cerwins—the legal issues were the same as those at issue in defendant Christina Cerwin's motion. As this Court has explained, "[t]he presentation of a new legal issue is distinguishable from the presentation of additional evidence," *Fox*, 161 N.C. App. at 463, 588 S.E.2d at 902, and only when the legal issues differ between the first motion for summary judgment and a subsequent motion may a trial court hear and rule on the subsequent motion. *See Carr*, 49 N.C. App. at 634, 272 S.E.2d at 377. Before Judge Cashwell, the key legal issues once again were agency—both apparent and actual—and the applicability of the UCC. As pointed out by counsel for plaintiffs, "[i]t may be a complex factual case, but the legal issue is a simple one . . . . It's just a legal question on agency, on the UCC point and the assignment point." On 3 March 2005, Judge Cashwell entered an order: (1) granting judgment for plaintiffs with respect to their first and second claims for relief; (2) granting judgment against plaintiffs with respect to their fourth and fifth claims for relief; (3) granting judgment against defendant Christina Cerwin with respect to her counterclaim; and (4) reserving judgment with respect to plaintiffs' third and sixth claims for relief. As such, Judge Cashwell's order overrules Judge Titus' order in several respects, and as Judge Cashwell had no jurisdiction to overrule Judge Titus on the same legal issues, Judge Cashwell's order must be vacated to the extent that it contradicts Judge Titus' earlier order. *See Shiloh Methodist Church v. Keever Heating & Cooling Co.*, 127 N.C. App. 619, 622 n.1, 492 S.E.2d 380, 382 (1997); *see also Furr*, 82 N.C. App. at 637, 347 S.E.2d at 483-84.

**[1]** First, Judge Titus denied defendant Christina Cerwin's motion for summary judgment on plaintiffs' first and second claims for relief, thereby concluding as a matter of law that there was a genuine issue of material fact. Therefore, Judge Cashwell was without jurisdiction to grant summary judgment in favor of plaintiffs on those same claims for relief and to conclude that there was no genuine issue of material fact. Similarly, Judge Titus denied defendant Christina Cerwin's motion with respect to plaintiffs' fourth claim for relief, but Judge Cashwell granted summary judgment against plaintiffs on their fourth claim for relief. In doing so, Judge Cashwell effectively overruled Judge Titus' ruling concerning the existence of a genuine issue of

App. 631, 272 S.E.2d 374, the second trial judge was able to consider fourteen additional depositions and seven additional affidavits, but this Court held that the additional evidence did not change the fact that "the *legal* issue raised by the second motion was identical to the *legal* issue on the first motion." *Carr*, 49 N.C. App. at 634, 272 S.E.2d at 377 (emphases added).

material fact. With respect to plaintiffs' third and sixth claims for relief, Judge Titus denied defendant Christina Cerwin's motion for summary judgment, but Judge Cashwell reserved ruling on those claims for relief. By reserving ruling, Judge Cashwell effectively rescinded Judge Titus' denial of summary judgment. Finally, on the counterclaim, Judge Titus denied summary judgment, but Judge Cashwell granted summary judgment against defendant Christina Cerwin, thereby overruling Judge Titus' conclusion that there remained a genuine issue of material fact.

The only portion of Judge Cashwell's order that does not overrule Judge Titus' order is with respect to plaintiffs' fifth claim for relief. Judge Titus neither granted nor denied the motion for summary judgment, and thus, it was permissible for Judge Cashwell to grant summary judgment against plaintiffs on that issue. *See Carr*, 49 N.C. App. at 633, 272 S.E.2d at 376 (holding that a second trial judge may modify a prior order that does not determine the issue). However, as plaintiffs did not cross-appeal from this portion of Judge Cashwell's order, this issue is not before this Court. *See* N.C. R. App. P. 10(a) (2006).

Accordingly, we vacate the trial court's order of 3 March 2005 to the extent that it overrules the 27 February 2004 order with respect to plaintiffs' first, second, third, fourth, and sixth claims for relief and defendant Christina Cerwin's counterclaim.

**[2]** By vacating Judge Cashwell's order to the extent it overrules Judge Titus' order, we effectively are reinstating Judge Titus' order, from which defendants also have appealed. Although defendants appeal from and assign error to Judge Titus' order denying defendant Christina Cerwin's motion for summary judgment, it is well-settled that "[t]he denial of a motion for summary judgment is interlocutory and not immediately appealable unless it affects a substantial right." *Williams v. Allen*, 182 N.C. App. 121, 127, 641 S.E.2d 391, 395 (2007) (internal quotation marks and citations omitted). In the section of their brief stating the grounds for appellate review, defendants contend they are appealing "the entry of interlocutory orders affecting substantial rights." Defendants, however, fail to articulate or argue any substantial right affected by the denial of defendant Christina Cerwin's motion for summary judgment and by the trial court's permitting the matter to proceed to the jury. As this Court has held,

[i]t is not the duty of this Court to construct arguments for or find support for appellant's right to appeal from an interlocutory

order; instead, the appellant has the burden of showing this Court that the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits.

*Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 380, 444 S.E.2d 252, 254 (1994). Accordingly, we dismiss this portion of defendants' appeal as interlocutory.

**[3]** Finally, defendants appeal from Judge Cashwell's order taxing defendants with costs and attorneys' fees. In the order, the trial court ordered that: (1) plaintiffs shall recover $6,684.90 from defendant Christina Cerwin for expenses incurred in defending against the foreclosure proceeding filed by defendant Christina Cerwin; (2) plaintiffs shall recover $25,200.00 from defendant Christina Cerwin for refusing to cancel the Deal Deed or, in the alternative, as a sanction pursuant to Rule 37(c) of the Rules of Civil Procedure; (3) the Cails shall recover from defendant Christina Cerwin a civil penalty of $500.00 pursuant to North Carolina General Statutes, section 45-36.3; and (4) Deal shall recover from defendant Christina Cerwin a civil penalty of $500.00 pursuant to section 45-36.3.

It is well-established that " 'costs in this State, are entirely creatures of legislation, and without this they do not exist.' " *Charlotte v. McNeely*, 281 N.C. 684, 691, 190 S.E.2d 179, 185 (1972) (quoting *Clerk's Office v. Comm'rs*, 121 N.C. 29, 30, 27 S.E. 1003 (1897)) (alteration omitted). As this Court has noted, "[s]ince costs may be taxed solely on the basis of statutory authority, it follows *a fortiori* that courts have no power to adjudge costs 'against anyone on mere equitable or moral grounds.' " *Dep't of Transp. v. Charlotte Area Manufactured Hous., Inc.*, 160 N.C. App. 461, 465, 586 S.E.2d 780, 782-83 (2003) (quoting *McNeely*, 281 N.C. at 691, 190 S.E.2d at 185).

In the instant case, the order taxing costs includes the general statement that the order was allowed "pursuant to [North Carolina] General Statutes[,] [sections] 45-36.3, 6.1 *et seq.*, [and] 7A-1 *et seq.*[,] and Rule 37(c) of the Rules of Civil Procedure." With respect to the award of $6,684.00, however, the order provides no specific statutory basis for the award for "expenses which were necessary and customary in defense of the [foreclosure] action." There is no provision in section 7A-1 *et seq.* that would support such an award; section 45-36.3, dealing with the cancellation of deeds of trust, and Rule 37(c), providing for sanctions for discovery violations, also are inapplicable to this particular award. Rather, the award of $6,684.00 ap-

pears to have been based upon North Carolina General Statutes, section 6.1 and the notion that plaintiffs were the prevailing parties as a result of Judge Cashwell's order granting summary judgment to plaintiffs on their second claim for relief—*i.e.*, an injunction against the foreclosure of the Deal Deed.

North Carolina General Statutes, section 6.1 establishes the general rule that costs may be allowed to the party in favor of whom judgment has been awarded. *See* N.C. Gen. Stat. § 6.1 (2005); *see also Williams v. Hughes*, 139 N.C. 17, 51 S.E. 790 (1905) (noting the "familiar rule, that costs follow the judgment, and are to be taxed against the defeated party."). As Judge Cashwell lacked jurisdiction to overrule Judge Titus' denial of summary judgment and to award summary judgment to plaintiffs on their second claim for relief, a valid judgment has not been awarded to plaintiffs and plaintiffs cannot be considered the prevailing parties. Thus, there does not appear to be a statutory basis for the award of $6,684.00, and accordingly, this portion of the order taxing costs must be vacated. As such, we need not reach defendants' argument that certain costs assessed against defendants for plaintiffs' defense of the foreclosure action were not authorized by North Carolina General Statutes, section 7A-305(d).

Next, the trial court specifically based its separate awards of $500.00 to the Cails and to Deal on defendant Christina Cerwin's failure to cancel the Deal Deed pursuant to North Carolina General Statutes, section 45-36.3. *See* N.C. Gen. Stat. § 45-36.3(b) (2005) (providing a civil penalty for failing to cancel a deed of trust pursuant to section 45-36.3(a)). In the first summary judgment order, Judge Titus denied defendant Christina Cerwin's motion for summary judgment with respect to plaintiffs' sixth claim for relief—*i.e.*, a civil penalty of up to $1,000.00 for defendants' failure to cancel the Deal Deed securing the Deal Note pursuant to section 45-36.3. In the second summary judgment order, Judge Cashwell reserved judgment on this issue, effectively overruling Judge Titus. As this portion of Judge Cashwell's summary judgment order must be vacated and as Judge Titus ruled that defendants' alleged violation of section 45-36.3 was an issue for the jury, Judge Cashwell erred in awarding a civil penalty to the Cails and Deal for defendants' failure to cancel the Deal Deed. Accordingly, the awards of $500.00 to the Cails and Deal must be vacated.

Similarly, one of the alternate bases for the trial court's order awarding $25,200.00 to plaintiffs was North Carolina General Statutes, section 45-36.3. In their third claim for relief, plaintiffs

sought attorneys' fees for defendants' failure to cancel the Deal Note and Deal Deed pursuant to section 45-36.3. *See* N.C. Gen. Stat. § 45-36.3(b) (2005). Judge Titus denied summary judgment on plaintiffs' third claim for relief and left the issue for the jury, but in the second summary judgment order, Judge Cashwell reserved judgment on this third claim for relief, contradicting Judge Titus' order. As we must vacate this portion of Judge Cashwell's summary judgment order, section 45-36.3 cannot support the court's award of $25,200.00 to plaintiffs.

**[4]** The only portion of the order taxing costs that is independent of Judge Cashwell's erroneous summary judgment order is the sanction pursuant to Rule 37(c) of the North Carolina Rules of Civil Procedure. Defendants contend that the trial court abused its discretion with respect to Rule 37(c). We disagree.

Pursuant to Rule 37(c) of the Rules of Civil Procedure,

[i]f a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees.

N.C. Gen. Stat. § 1A-1, Rule 37(c) (2005). The statute provides four exceptions by which the trial court may decline to award expenses pursuant to Rule 37(c): "(i) the request was held objectionable pursuant to Rule 36(a), or (ii) the admission sought was of no substantial importance, or (iii) the party failing to admit had reasonable ground to believe that he might prevail on the matter, or (iv) there was other good reason for the failure to admit." *Id.* Our Supreme Court has held that the trial court need not make findings of fact with respect to the four exceptions to Rule 37(c), and where neither party made such a request of the trial judge, Rule 52 provides that it is presumed that the court, on proper evidence, found facts to support its judgment. *See Watkins v. Hellings*, 321 N.C. 78, 82, 361 S.E.2d 568, 571 (1987).

It is well-established that " '[t]he choice of sanctions under Rule 37 is within the trial court's discretion and will not be overturned on appeal absent a showing of abuse of that discretion.' " *Oakes v. Wooten*, 173 N.C. App. 506, 516, 620 S.E.2d 39, 46 (2005) (quoting *Brooks v. Giesey*, 106 N.C. App. 586, 592, 418 S.E.2d 236, 239,

*disc. rev. denied,* 332 N.C. 664, 424 S.E.2d 904 (1992)). Furthermore, " '[t]he party wishing to avoid court-imposed sanctions for non-compliance with discovery requests bears the burden of showing the non-compliance was justified.' " *Id.* (quoting *Williams v. N.C. Dep't of Env't & Natural Res.,* 166 N.C. App. 86, 92, 601 S.E.2d 231, 235 (2004), *disc. rev. denied,* 359 N.C. 643, 614 S.E.2d 925 (2005)).

In the case *sub judice,* plaintiffs filed a motion on 21 April 2005 to tax costs to defendants. Although the record contains no written response by defendants to plaintiffs' motion, defendants argued during the hearing on the motion that they properly responded to each request for admissions. In their brief to this Court, defendants contend that their access to requested information was limited as a result of Canusa being placed in receivership and Lancaster's imprisonment. However, during the hearing, defendants failed to request that the trial court make findings with respect to the four exceptions enumerated in Rule 37(c). As such, it is presumed that the court, on proper evidence, found facts to support its conclusions and order. *See Watkins,* 321 N.C. at 82, 361 S.E.2d at 571. Further, in his order, Judge Cashwell listed the specific requests for admissions that defendants improperly denied, and noted that plaintiffs ultimately proved those matters. *See Brooks,* 106 N.C. App. at 593, 418 S.E.2d at 239-40. Finally, in his order, Judge Cashwell provided an itemized list of the attorneys' fees attributable to the failure to admit, and concluded that the attorneys' fees were reasonable. *See id.* at 593, 418 S.E.2d at 240. Accordingly, the trial court did not abuse its discretion in taxing defendant Christina Cerwin with costs of $25,200.00 pursuant to Rule 37(c), and defendants assignment of error, therefore, is overruled.

Vacated in part; Dismissed in part; and Affirmed in part.

Judges WYNN and STEELMAN concur.