MARCO PETERS PLAINTIFF V. LISA PENNINGTON DEFENDANT

No. COA10-91

(Filed 1 March 2011)

**1. Appeal and Error— interlocutory orders and appeals— merged into final order—timely appeal**

The Court of Appeals had jurisdiction over a custody case where the trial court's 6 March order did not determine all of the issues, those issues were determined by an order on 20 May, and defendant's appeal on 6 June was timely. The original order became part of a final order on 20 May.

**2. Child Custody and Support— custody—best interests analysis— change of circumstances not found**

The trial court in a child custody case correctly proceeded directly to the best-interests analysis without finding a substantial change in circumstances where a prior consent order dealt with narrow matters and did not incorporate the separation agreement. It was not necessary to decide whether the consent order could constitute a final custody order since its issues were not at the crux of the appeal.

**3. Child Custody and Support— damage to child—ultimate conclusion—supported by findings**

There were ample unchallenged findings of fact in a child custody dispute to support the trial court's ultimate factual conclusion that defendant caused physical and psychological damage to her child.

1

**4. Child Custody and Support— mental or emotional harm to child—expert testimony not required**

District court judges have the training and experience to make causal decisions regarding child custody and expert testimony is not required to determine the cause of mental or emotional harm to the children. The trial court's conclusion here was supported by the findings and evidence, except the finding that DSS substantiated allegations of abuse. The evidence indicated that DSS substantiated neglect but not abuse.

**5. Child Custody and Support— allocation of physical and legal custody—medical decision making—no error**

The trial court did not abuse its discretion in a child custody case by allocating to plaintiff permanent sole physical and legal custody with the exception of temporary custody related to medical decision making, which was shared. The portion of the order indicating that the medical decision-making provision could be modified if plaintiff demonstrated responsibility would require a substantial change in circumstances, as would a similar provision on visitation.

**6. Child Visitation— visitation restricted—clear, cogent, and convincing standard—not required**

The trial court was not required to apply the clear, cogent and convincing evidentiary standard when restricting defendant's visitation with her children in a custody case because the court did not prohibit all visitation or contact.

**7. Child Visitation— therapeutic visitation—controlled by therapists**

The trial court did not err by authorizing therapeutic visitation between defendant and her children to be controlled by therapists. This arrangement did not present the problems inherent in custodian-controlled visitation because neutral decision makers, who were in the best position to evaluate the mental condition of defendant and the children, had the authority to craft the details of an elastic treatment and visitation program.

**8. Child Custody and Support— mother required to accept court's conclusion—belief rather than behavior**

The trial court abused its discretion in a child custody case by requiring defendant to accept as true the court's conclusion that she harmed her children. This requirement mandates that

defendant and the therapist attain a standard based upon defendant's beliefs rather than her behavior.

**9. Child Custody and Support— uninsured therapy costs— support rather than costs**

The trial court did not err in a child custody case by taxing defendant with the children's uninsured therapy costs as "equitable" costs. Uninsured therapy expenses are not taxable costs but are awarded pursuant to the court's ability to structure child support.

**10. Attorney Fees— child custody—court's observation of attorney**

The trial court did not err in its award of attorney fees in a child custody case where the court had ample opportunity to observe the attorney whose fees were questioned and to judge her reputation for diligence and competence.

**11. Attorney Fees— child custody—factors**

The award of attorney fees in a child custody case was supported by the complexity of the case, the difficulty of litigation-related issues, and the results obtained.

**12. Attorney Fees— payment on a schedule—interest**

The trial court did not abuse its discretion when awarding attorney fees in a child custody case by requiring payment on a schedule since defendant was free to satisfy the judgment early. However, the portion of the order imposing interest was vacated.

**13. Costs— child custody—litigation expenses**

The portions of an award of costs other than attorney fees in a child custody case were remanded for a hearing on how those costs were incurred and whether they are authorized by statute.

**14. Pleadings— sanctions—inadequate inquiry into allegations**

The trial court correctly decided to sanction an attorney in a child custody case where the attorney either did not make an adequate inquiry into factual allegations or did not reasonably believe that the allegations were well-grounded in fact.

Appeals by Defendant and her trial counsel, Erica N. Burns, from five orders of the Mecklenburg District Court, Judge Rebecca T. Tin presiding: the first a 6 March 2009 order addressing permanent child custody; the second a 6 March 2009 summary order provided to the Charlotte Mecklenburg School System Legal Department; the third

entered 14 April 2009 awarding a preliminary injunction; the fourth entered 20 May 2009 awarding permanent child support and attorney's fees; and the fifth entered 29 May 2009 denying Defendant's motion for a stay, a new trial, and to recuse Judge Tin, and also imposing sanctions against Ms. Burns. Heard in the Court of Appeals 14 September 2010.

> *Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for Appellant Lisa Pennington.*
>
> *James McElroy & Diehl, by Preston O. Odom, III, Jonathan D. Feit, and Sarah M. Brady, for Appellee Marco Peters.*
>
> *Erica N. Burns, pro se Appellant.*

HUNTER, JR., Robert N., Judge.

Defendant Lisa Pennington ("Dr. Pennington") appeals a series of rulings by the district court awarding primary custody, child support, injunctive relief, and attorney's fees to her former husband, and the children's father, Plaintiff Marco Peters ("Dr. Peters"). These orders severely restricted Dr. Pennington's visitation rights with the children pending further court review. They also imposed support obligations, taxed costs, and taxed attorney's fees. Erica N. Burns, Dr. Pennington's trial counsel, appeals Rule 11 sanctions imposed against her individually, which were awarded by the court for filing post-hearing motions to stay the aforesaid orders, seeking a new trial, and seeking the recusal of the presiding judge. We affirm the district court in part, vacate in part, and remand for further proceedings.

## I. Factual and Procedural Background

Dr. Lisa Pennington, a child psychologist, and Dr. Marco Peters, a chiropractor, were married in 1997. They had two sons, Dennis and Frank, who were eight and ten, respectively, when the Court heard this case.[1] After the parties separated in 2005, they entered into a separation agreement in which they agreed to share joint physical and legal custody of the children. Two months later, Dr. Peters filed a complaint seeking absolute divorce, which was awarded in February of 2006. The divorce decree did not incorporate the separation agreement.

After the separation, the parties appear to have cooperated with each other regarding the joint custody of their children for approxi-

---

1. Pseudonyms conceal the identities of the juveniles involved in this case.

mately two years. A disagreement arose between the parents pertaining to medical care and educational issues. The parties mediated the dispute on 19 June 2007, resulting in a 31 July 2007 consent order. The consent order addressed three issues: medical care for Dennis's asthma, routine bedtimes for the children, and preparation for school. The consent order also contained a non-disparagement clause that prevented either party from making or allowing others to make disparaging comments about each other in the presence of the children.

The consent order acknowledged the parties' separation agreement in several places, including finding of fact 8:

[P]ursuant to the parties' agreement, they are exercising joint legal and physical custody of their minor children, and they have practiced this in accordance with the schedule worked out between them. The parties acknowledge that joint legal custody means advising the other party of all medications and treatment prescribed or given to the minor children from any source, including homeopathic and Chinese herbal medicine.

On 26 September 2007, Dr. Pennington filed her first motion for permanent custody and child support. She alleged Dr. Peters neglected to attend to the children's schoolwork, allowed them to bathe with other children living in his home, failed to deliver them to soccer practice, failed to administer medications to the children according to the consent order, and was late in making his required contributions for the children's support (specifically, his duty to pay for health insurance and uninsured health costs). On 1 November 2007, Dr. Peters denied these allegations and moved for dismissal. A mediated settlement conference conducted on 18 January 2008 did not resolve the dispute.

On 1 February 2008, Dr. Pennington filed a second motion to restrict Dr. Peter's visitation rights. She based her motion on allegations that Dr. Peters and his fiancée sexually and physically abused the children. On 1 February 2008 and 4 February 2008, based on this second motion, two *ex parte* orders were entered: the first temporarily suspending Dr. Peters' visitation rights until a hearing could be held and the second appointing M. Timothy Porterfield as guardian *ad litem*. On 11 February 2008, Dr. Peters denied the allegations, asked the trial court to appoint a guardian *ad litem*, and requested the restoration of his custodial rights.

A hearing was held on Dr. Pennington's second motion on 18 February 2008 before Judge Christy Mann. The resulting order

restricted Dr. Peter's visitation to supervised visitation to be administered by the children's paternal grandparents, ordered the Mecklenburg County Department of Social Services (DSS) to conduct a child medical evaluation, ordered joint access to school and medical records, specified administration of asthma medication, and required cooperation with the guardian *ad litem* per N.C. Gen. Stat. § 7B-601(c). The order also contained the following restrictions with regard to the "communications regarding these proceedings":

> 6 b). Neither mother nor father shall discuss with the children these, or any other, legal proceedings nor the legal case in any-way. If a child brings the subject up on his own, the parent (both mother, Lisa Pennington or father, Marco Peters) shall say, ". . . those are subjects to be discussed with Mr. Porterfield . . ." and simply change the subject . . . .

> 6 c). Neither mother nor father shall discuss with the children the sexual allegation in any way . . . .

On 28 March 2008, Dr. Pennington filed a third motion with the court to restrict and clarify the role of the guardian *ad litem* in the proceedings and require that he make "evidence based decisions." Dr. Pennington based this motion on alleged conversations with the minor children about "inappropriate" communications or touching of the children during Dr. Peters' supervised visitations and her subsequent report of these conversations to the DSS supervisor and the guardian *ad litem*. Dr. Pennington requested that the children have the expertise of a child psychologist rather than or in addition to the guardian *ad litem* to discuss the alleged abuse or inappropriate behavior of Dr. Peters. The motion also alleged that, prior to the entry of the order of 28 February 2008, Dr. Pennington had supplied the children with a therapist, Michael Tanis, but had terminated the therapy after the 28 February 2008 order was entered. Although Dr. Peters contends this motion was denied by the court in April, the record does not appear to contain an order to that effect.

On 22 July 2008, Dr. Peters filed a motion for temporary and full custody and to show cause why Dr. Pennington should not be held in contempt for violation of Judge Mann's 28 February 2008 order, which, among other things, prohibited the parties from discussing the subject matter of the litigation with the children. The motion also sought child support, attorney's fees, and a limitation on Dr. Pennington's visitation rights. The factual predicate for his motion was that Dr. Pennington's allegations had been investigated by appro-

priate authorities (including DSS, the Charlotte-Mecklenburg County Police Department, and the court sanctioned therapist) and found to lack credibility or factual support. Dr. Peters' motion contended Dr. Pennington's allegations of abuse coincide with his deepening involvement with his new fiancée. Furthermore, Dr. Peters alleged Dr. Pennington's conduct clearly violated Judge Mann's order not to discuss or have others discuss the events of sexual abuse with the children. Dr. Peters alleged Dr. Pennington's conduct in making unfounded allegations and discussing them with the children was injurious to the children and resulted in fecal incontinence, suicidal ideations, marked change in behavior, withdrawal from family members, and emotional distress. On 23 July 2008, DSS opened an investigation of Dr. Pennington based upon the father's allegations. On 25 July 2008, Dr. Peters' request for a temporary injunction was granted in part—Dr. Pennington was restrained from filing any additional complaints without the consent of the guardian *ad litem* and all records were to be given to the guardian *ad litem*.

A hearing on the motion was set for the week of 8 August 2008. Before the hearing, the parties received a written report from Dr. Pugh-Lilly (the DSS and guardian *ad litem* selected therapist for the child evaluation). In addition, Dr. Pennington presented her own extensive affidavit, together with supporting affidavits from Dr. Viola Vaughan-Eden and Dr. Seth Goldstein criticizing the professional work of Dr. Pugh-Lilly's examination of the children. There is no order in the record derived from this hearing. Dr. Peters changed counsel, and the case was eventually set for a two-week, complex domestic trial beginning on 2 February 2009. Ms. Burns, a member of the Pennsylvania Bar, was admitted *pro hac vice* to serve as an additional member of Dr. Pennington's trial counsel.

Due to complaints filed by the parties, investigations were conducted that paralleled these legal proceedings. The Charlotte-Mecklenburg County Police Department and DSS investigated Dr. Pennington's allegations of abuse, determined they were unfounded, and closed the case. Following the report of Dr. Pugh-Lilly, DSS substantiated claims of neglect against Dr. Pennington.

Judge Rebecca T. Tin presided over a three-week trial, which commenced on 2 February 2009. Over twenty-four witnesses testified, including the parties, relatives and friends, school officials, law enforcement officers, DSS personnel, the boys' former and current therapists, and several expert witnesses. There were two central

issues: (1) whether Dr. Peters abused his sons and (2) whether Dr. Pennington's actions in connection with her allegations of abuse were abusive and caused damage to the children. The trial court concluded Dr. Pennington's allegations of sexual and physical abuse arose from Dr. Peters' and his fiancée's hygiene practices. Both children are uncircumcised and the father had shown the boys how to wash themselves. The younger child needed help cleaning himself after defecating. Dr. Peters' fiancée, who is of Japanese descent, had a custom of cleaning the boys' ears with an ear pick. The boys' reports of these events to their mother were cryptic, and she and her "live-in friend" made rash inferences arising from the boys' reports during a scuffle the boys had when playing. After the trial, the trial court announced a verbal order from the bench on 19 February 2009; the court entered a written version of the order on 6 March 2009.

The court classified the following findings as "conclusions of law":

1.  Plaintiff/Father has never physically or sexually abused the minor children.

. . . .

3.  Defendant/Mother has inflicted serious emotional, psychological, and physical damage on the minor children as a result of her false belief that Plaintiff/Father has abused them.

4.  Defendant/Mother has quizzed, coerced, pressured, and directed the minor children in an effort to use their voices to tell false stories of sexual abuse by Plaintiff/Father.

5.  While Defendant/Mother may have come to believe the false allegations of abuse, she overlooked the well-being of the minor children in trying to prove the allegations to be true at whatever cost.

6.  Defendant/Mother, along with Mr. David Delac, has manipulated, whether intentionally or not, the minor children's recollections and memories, instilling in them false images of being sexually abused by their father.

7.  Defendant/Mother's abuse of her children has been persistent and ongoing since January of 2008, despite Court Orders that she cease and desist from talking to her children about the allegations.

8.  The minor children have deteriorated considerably to due Defendant/Mother's abuse.

PETERS v. PENNINGTON

[210 N.C. App. 1 (2011)]

9. The minor children face an imminent threat of harm if they are in Defendant/Mother's presence without supervision.

The trial court made the following conclusions of law regarding custody:

2. With the exception of medical decision-making, Plaintiff/Father is a fit and proper person to exercise the permanent sole physical and legal custody of the minor children. The custody order, as set forth below, is in the best interests and welfare of the minor children.

. . . .

10. Defendant/Mother is not a fit nor proper person to exercise custody or unsupervised visitation with the minor children.

. . . .

17. The temporary legal custody of the children with respect to medical decision making only shall be shared between the parties.

The 6 March 2009 order awarded "permanent sole physical and legal custody" to Dr. Peters. Dr. Pennington was permitted "therapeutic visitation" if Dr. Pennington's therapist and two of the boys' therapists "believe such therapeutic sessions are appropriate." The order forbids any further visitation by Dr. Pennington.

The order required both Dr. Pennington and the children to undergo therapy:

5. Defendant/Mother shall obtain mental health treatment by a provider who shall read this Order in full, shall commit to whole-heartedly accepting that the findings contained herein constitute the reality of Frank and Dennis's lives and Defendant/Mother's role in fabricating sex abuse allegations, even though she may have genuine belief that such events occurred, and shall work towards Defendant/Mother's rehabilitation in acknowledging that Plaintiff/Father has not sexually abused the minor children and in taking responsibility for the damage she has caused to her sons. Defendant/Mother's therapy may include any other areas that the provider identifies.

. . . .

7. The minor children shall continue in therapy with Dr. Curran and Ms. Duncan, who shall read this order in its entirety and commit

to accepting it wholeheartedly as the facts constituting the false allegations of sexual abuse with respect to Frank and Dennis. Dr. Curran and Ms. Duncan shall determine what type of therapy the minor children need in light of these findings.

The order requires Dr. Pennington to waive confidentiality to her therapeutic records if she is seeking unsupervised visitation. The order also stated the boys' therapists "should" work with Dr. Pennington's therapist to arrange "reunification therapy" when they determine it is appropriate.

The order indicates how the trial court intends to reevaluate visitation in the future:

11. The Court hopes to work toward supervised visitation for Defendant/Mother as soon as it is recommended by the GAL and the therapists. The goal, if possible, would include Plaintiff/Father as a supervisor and visits at Plaintiff/Father's home, so that the minor children see that Defendant/Mother believes Plaintiff/lFather and Plaintiff/Father's home is safe. This order, in regards to Defendant/Mother's contact with the minor children, is temporary in nature and will be reviewed and modified by the Court based upon Defendant/Mother's progress in therapy. . . .

. . . .

13. On or before March 6, 2009, the Court shall conduct a hearing or conference to ensure therapeutic arrangements are in place and to consider a plan for supervised visitation when advisable by the GAL and the therapists.

14. Review hearings regarding Defendant/Mother's contact with the children should be scheduled every three to four months, unless the GAL requests an earlier hearing. At these hearings, the Court will review Defendant/Mother's therapeutic progress individually and her therapeutic progress in reunification therapeutic sessions with the minor children.

15. Defendant/Mother's future ability to obtain unsupervised visitation with the minor children will be based upon documented and transformative progress on the part of Defendant/Mother, testified to by multiple witnesses, including the children's therapists, Defendant/Mother's court-appointed therapist, Plaintiff/Father, Ms. Pam Pitser, and any other witnesses with direct knowledge of Defendant/Mother's interactions with the children in supervised situations, direct knowledge of the children's progress, or direct

knowledge of discussions with Defendant/Mother regarding her changed perspective. Transformative progress by Defendant/Mother can also be documented through testimony of Defendant/Mother's family members, who Defendant/Mother must convince of the wrongness of her path in forcing the children to bear false witness against Plaintiff/Father. The children cannot visit unsupervised with Defendant/Mother in the presence of Defendant/Mother's extended family members if those family members still have a belief that Plaintiff/Father is sexually abusing the minor children. It may be that unsupervised visitation is never reached; this remains in the Court's sole discretion.

The trial court also ordered Dr. Pennington to pay all uninsured therapy costs incurred on behalf of the children due to her "role in creating this crisis." The order described this portion of the order as a separate equitable remedy.

Following the entry of this order, Dr. Peters sought a temporary restraining order, which the trial court granted on 16 March 2009. The order prevented Dr. Pennington's family members from visiting the children in the neighborhood and in school or communicating with them. This order was extended until the matter was subsequently set for hearing. In the interim period, Dr. Pennington's mother, father, and sister all filed motions to dismiss in part based on lack of jurisdiction. On 14 April 2009, the trial court granted a preliminary injunctive order prohibiting Dr. Pennington's relatives from contacting the children.

On 8 March 2009, Ms. Burns served a motion to stay enforcement of the court's order pending appeal as well as motions for a new trial under Rule 59 and a motion to recuse Judge Tin from further proceedings in this matter. Ms. Burns filed the motion on 8 March 2009, but local counsel for Dr. Pennington did not sign the motion. Dr. Pennington's local counsel was allowed to withdraw from representation by a 6 April 2009 court order.

Following this motion, Dr. Peters, the guardian ad litem, and the court sua sponte all filed responses seeking Rule 11 sanctions including attorney's fees. At the core of Ms. Burns' motions were allegations that the trial court refused to hear all the evidence Dr. Pennington sought to put before the court and that the court had reached its conclusions adverse to Dr. Pennington's position before the close of evidence. Subsequently, the court ruled from the bench and entered a written order on 29 May 2009 denying the motions for stay, new trial, and recusal. The court also sanctioned Ms. Burns under Rule 11 by

ordering her to pay $7750 in attorney's fees to opposing counsel, $1820 in attorney's fees to the guardian *ad litem*, and $875 for costs incurred by the court in dealing with these motions.

## II. Jurisdiction

[1] The trial court's 6 March 2009 permanent custody order did not determine all the issues presented by Dr. Peters' 22 July 2008 motion for immediate temporary custody, full permanent custody, child support, and attorney's fees and costs. All remaining issues presented by the parties' initial permanent custody motions were determined 20 May 2009 when the trial court entered its order addressing permanent child support, attorney's fees, and costs. The original custody order became part of a final order at this time. Therefore, Dr. Pennington's notice of appeal from both of the 6 March 2009 orders, which was filed 6 June 2009, was timely. *See* N.C. R. App. P. 3(c)(1) ("In civil actions and special proceedings, a party must file and serve a notice of appeal . . . within thirty days after entry of judgment if the party has been served with a copy of the judgment within the three day period prescribed by Rule 58 of the Rules of Civil Procedure . . . ."); *N.C. Dep't of Transp. v. Rowe*, 351 N.C. 172, 176, 521 S.E.2d 707, 710 (1999) (holding a party is not required to appeal an interlocutory order in order to preserve the right to appeal when that order becomes final). Dr. Pennington gave timely notice of appeal as to the other orders as well. Ms. Burns also gave timely notice of appeal.

Appeal lies of right directly to this Court from final orders of a district court. N.C. Gen. Stat. § 7A-27(c) (2009). Therefore, we have jurisdiction over Dr. Pennington's and Ms. Burns' appeals.

## III. Analysis

A. Dr. Pennington's Child Custody Appeal

We review the 6 March 2009 permanent custody order under the standard three prong test for appellate review of orders resulting from a custody bench trial: we ascertain (1) whether the challenged findings of fact are supported by substantial evidence; (2) whether the trial court's findings of fact support its conclusions of law; and (3) whether the trial court abused its discretion in fashioning the custody and visitation order.

1. Standard of Review

In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if

there is sufficient evidence to support contrary findings. *E.g.,* *Everette v. Collins,* 176 N.C. App. 168, 170, 625 S.E.2d 796, 798 (2006). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). Unchallenged findings of fact are binding on appeal. *See, e.g., Koufman v. Koufman,* 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal."). The trial court's conclusions of law must be supported by adequate findings of fact. *Witherow v. Witherow,* 99 N.C. App. 61, 63, 392 S.E.2d 627, 629 (1990). Whether a district court has utilized the proper custody modification standard is a question of law we review *de novo. See, e.g., Simmons v. Arriola,* 160 N.C. App. 671, 674-76, 586 S.E.2d 809, 811-12 (2003) (according no deference to the trial court's modification standard determinations). "Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal." *Everette,* 176 N.C. App. at 171, 625 S.E.2d at 798.

2. Whether the trial court utilized the proper legal framework

[2] Dr. Pennington argues the entire 6 March 2009 custody order must be vacated because the trial court failed to determine whether there had been a substantial change in circumstances affecting the welfare of the children since the 31 July 2007 consent order. She contends the 31 July 2007 consent order incorporated the parties' separation agreement, and therefore, the court was required to conclude there had been a substantial change in circumstances before modifying the joint custody provisions contained in the separation agreement. We disagree.

If a child custody or visitation order is permanent, a court may not modify that order unless it finds there has been a substantial change in circumstances affecting the welfare of the child. *E.g., Arriola,* 160 N.C. App. at 674, 586 S.E.2d at 811. If the court concludes there has been a substantial change in circumstances, it may modify the order if the alteration is in the best interests of the child. *E.g., Evans v. Evans,* 138 N.C. App. 135, 139, 530 S.E.2d 576, 578-79 (2000). If a prior order is temporary, the trial court can proceed directly to the best-interests analysis. *Arriola,* 160 N.C. App. at 674, 586 S.E.2d at 811. The trial court's designation of an order as temporary or permanent does not control. *Brewer v. Brewer,* 139 N.C. App. 222, 228, 533 S.E.2d 541, 546 (2000). "[A]n order is temporary if either (1) it is entered without prejudice to either party[;] (2) it states a clear and

specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues." *Senner v. Senner*, 161 N.C. App. 78, 81, 587 S.E.2d 675, 677 (2003). If the order does not meet any of these criteria, it is permanent. *See id.*

A custody agreement is a contract—but if a court order incorporates the custody agreement, modification requires a showing of changed circumstances. *See Tyndall v. Tyndall*, 80 N.C. App. 722, 723, 343 S.E.2d 284, 284 (1986) (stating this principle in the context of child support). A domestic agreement remains modifiable by traditional contract principles unless a party submits it to the court for approval or if a court order specifically incorporates the separation agreement. *See Jones v. Jones*, 144 N.C. App. 595, 601, 548 S.E.2d 565, 569 (2001) (stating this proposition in the context of an alimony case). The consent order in this case recognizes the existence of the separation agreement and indicates the agreement gives the parties "joint physical and legal custody," but the consent order does not incorporate or approve the separation agreement. We conclude the separation agreement never became part of the consent order.

The consent order dealt with several narrow matters: medical issues, bed times, schoolwork, and the requirement that neither parent make or permit others to make disparaging comments about the other parent in front of the children. We need not decide whether the consent order could constitute a final custody order with respect to these issues since the modification of bed times, schoolwork agreements, and the requirement that neither party make disparaging comments about the other is not the crux of Dr. Pennington's appeal. Her argument on appeal relates to the trial court's decision to award full custody to Dr. Peters in other areas. She does not argue the trial court improperly modified the terms of their medical decision-making consent agreement. In fact, the final order expands Dr. Pennington's ability to overrule Dr. Peters' medical decisions. Thus, the three-prong temporary-permanent analysis is irrelevant here because the consent order did not address the core issues that are the subject of this appeal. In other words, the 6 March 2007 order determining custody did not modify the consent order, and the trial court correctly proceeded to the best-interests analysis, insofar as this appeal is concerned.

Dr. Pennington's argument is further undermined by her litigation posture at trial. She made the following representation in her 26 September 2007 motion for child custody: "There have been no prior

custody proceedings concerning these minor children in the Courts of this jurisdiction or the Courts of any other jurisdiction." "[T]he law does not permit parties to swap horses between courts in order to get a better mount . . . ." *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934).[2]

3.  Whether the trial court's findings are supported by substantial evidence

**[3]** Dr. Pennington argues there was no evidentiary support for the trial court's causation finding that she "inflicted serious emotional, psychological, and physical damage on the minor children as a result of her false belief that Plaintiff/Father has abused them." Generally, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations omitted). On the other hand, "[a]ny determination reached through 'logical reasoning from the evidentiary facts' is more properly classified a finding of fact." *Id.* (quoting *Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 657-58 (1982)). The trial court's conclusion that Dr. Pennington inflicted physical and emotional harm falls into the latter category even though it is listed as a "conclusion of law." Therefore, we review the "conclusion of law" as we would a finding of fact. *See, e.g., Crowley v. Crowley*, —— N.C. App. ——, ——, 691 S.E.2d 727, 734 (2010) (treating the trial court's "finding of fact" as a "conclusion of law"). Causation is a factual inquiry. *Bjornsson v. Mize*, 75 N.C. App. 289, 292, 330 S.E.2d 520, 523 (1985). A causation finding can rely on other factual findings for support. There are ample unchallenged findings of fact that support the trial court's ultimate factual conclusion that Dr. Pennington caused physical and psychological damage to her children.

For example, with respect to physical damage, the trial court found that Dennis had developed encopresis over the course of the year before the custody order was entered.[3] The trial court also found that, since the onset of supervised visitation following the sexual allegations against Dr. Peters, Dennis began soiling his pants during nearly every supervised visit.

2.  Dr. Peters argued Dr. Pennington failed to allege a substantial change in circumstances. Nevertheless, the trial court resolved this matter by adopting Dr. Pennington's position.

3.  Encropesis is "[t]he involuntary discharge of feces." J.E. Schmidt, 2 *Attorney's Dictionary of Medicine and Word Finder*, E-89 (2009).

The trial court's findings of fact likewise support the trial court's finding that Dr. Pennington caused mental and emotional harm to her children. The court found Dr. Pennington "quizzed, coerced, pressured, and directed" her children to tell false stories of sexual abuse. The trial court also found Dr. Pennington and her "live-in-friend," Mr. Delac, "manipulated, whether intentionally or not, the minor children's recollections and memories, instilling in them false images of being sexually abused by their father." Based on Dr. Curran's testimony, the trial court found Frank was permeated with feelings of guilt because he believed he was unable to protect his brother from sexual abuse.

While Dr. Pennington's brief lists numerous assignments of error that correspond to findings of fact in the heading of her argument section, this is insufficient to challenge findings of fact on appeal. A party abandons a factual assignment of error when she fails to argue specifically in her brief that the contested finding of fact was unsupported by the evidence. See In re P.M., 169 N.C. App. 423, 424, 610 S.E.2d 403, 404-05 (2005) (concluding respondent had abandoned factual assignments of error when she "failed to specifically argue in her brief that they were unsupported by evidence"). We have nevertheless reviewed the findings that support the trial court's ultimate mental and physical harm causation finding and conclude they are supported by substantial evidence. Consequently, they are binding on appeal.

[4] Dr. Pennington contends a fact finder cannot determine the cause of mental or emotional harm absent expert testimony regarding causation. We have never held this to be the case, and we decline to do so here. While expert testimony on causation might assist the trier of fact, it is not required to show causation. A domestic trial court judge hears numerous child custody cases every month. They have practical experience and training in human behavior that qualifies them to make causal decisions regarding child custody. They have the ability to select such facts from evidence to form a chronological chain of acts preceding an effect or event that they determine brought about the effect or event. We conclude there are ample adequately supported factual findings that support the trial court's conclusion that Dr. Pennington's actions have caused her children mental and emotional harm.

While we leave the trial court's causation finding undisturbed, we vacate finding of fact 30 insofar as it indicates DSS substantiated allegations that Dr. Pennington abused her children. Plaintiff's trial exhibit 28 plainly indicates DSS substantiated neglect, but did not

substantiate abuse. The portion of finding of fact 30 indicating DSS substantiated neglect remains undisturbed on remand.

4. Whether the trial court's findings of fact support its conclusions of law

[5] Dr. Pennington next takes issue with the trial court's allocation of legal custody. The trial court awarded Dr. Peters "permanent sole physical and legal custody" with the "exception of temporary legal custody related to medical decision-making." The parties are required to share "temporary legal custody of the children with respect to medical decision[-]making." The order indicates the trial court split legal custody in this fashion because the court found Dr. Peters was not "fit and proper" to exercise sole medical decision-making authority. The trial court provided a detailed framework to which the parties are required to adhere until they "jointly agree to a different procedure or approach." The order also states that the medical decision-making portion of the order is "temporary in nature and will be reviewed and modified by the Court based upon Plaintiff/Father's demonstration that he is responsible enough to oversee medical decisions on behalf of the minor children." Dr. Pennington argues the trial court's findings and conclusions do not support the allocation of permanent legal custody. She also contends the medical decision-making carve-out allows Dr. Peters to impermissibly modify the custody order without demonstrating a substantial change in circumstances.

In a dispute between natural parents, child custody is awarded based on the best interests of the child. *Everette*, 176 N.C. App. at 173, 625 S.E.2d at 799. Legal custody refers "generally to the right and responsibility to make decisions with important and long-term implications for a child's best interest and welfare." *Diehl v. Diehl*, 177 N.C. App. 642, 646, 630 S.E.2d 25, 27 (2006); *accord* 3 Suzanne Reynolds, *Lee's North Carolina Family Law* § 13.2b, at 13-16 (5th ed. 2002). Our trial courts have wide latitude in distributing decision-making authority between the parties based on the specifics of a case. *See Diehl*, 177 N.C. App. at 647, 630 S.E.2d at 28. However, a trial court's findings of fact must support the court's exercise of this discretion. *Id.*

The findings of fact discussed *supra* support the award of permanent legal custody. The trial court did not abuse its discretion by vesting nearly all long-term decision-making in Dr. Peters based on its findings regarding Dr. Pennington's behavior towards the children. Based on the best interests of the children, the trial court appropriately

divided medical decision-making to account for Dr. Peters' inability to make responsible medical decisions.

Dr. Pennington contends this case is analogous to *Diehl v. Diehl*, where we held the trial court's factual findings were insufficient to deprive a father of all legal custody. *Id.* at 647-48, 630 S.E.2d at 29. There, the trial court's findings reflected the parties' inability to communicate effectively, the father's general uncooperativeness, and the fact that the father had exercised sporadic visitation, among other things. *Id.* at 647, 630 S.E.2d at 28. In concluding these findings were insufficient to restrict the father's legal custody, the Court noted these findings primarily addressed the trial court's rationale for restricting *physical* custody. In this case, on the other hand, the trial court's findings regarding Dr. Pennington's conduct bear on her fitness to exercise physical *and legal* custody.

We also disagree with Dr. Pennington's argument that we must vacate the order because it impermissibly allows Dr. Peters to modify a permanent order without showing there has been a substantial change in circumstances. A custody order cannot be partially permanent and partially temporary. *See Smith v. Barbour*, 195 N.C. App. 244, 250, 671 S.E.2d 578, 583 (2009) (refusing to adopt a litigant's position that an order could be partially permanent and partially temporary). While the custody order in this case states it is temporary in several respects, a trial court's characterization of an order as temporary or permanent is not binding on this Court. *Id.* at 249, 671 S.E.2d at 582.

Under the three-prong temporary-permanent test,[4] the order is permanent. Clearly, the order was not entered without prejudice to either party. Nothing in the order definitively sets a specific reconvening time beyond the date the order was entered.[5] The subsequent order ruling on costs, among other things, determined finally all substantive issues presented by the parties' pleadings. That the medical decision-making portion of the order can be modified if Dr. Peters demonstrates to the trial court he is responsible enough to make medical decisions, indicates a substantial change in circumstances *is*

---

4. As we explain *supra*, an order is temporary if "either (1) it is entered without prejudice to either party[;] (2) it states a clear and specific reconvening time in the order and the time interval between the two hearings was reasonably brief; or (3) the order does not determine all the issues." *Senner*, 161 N.C. App. at 81, 587 S.E.2d at 677.

5. The order states that the court would conduct an additional visitation hearing on or before 6 March 2009. The order was announced in court on 19 February 2009, but entered on 6 March 2009. Therefore, the order did not set an additional specific date to readdress "temporary issues."

*required.* The order also states it is temporary in nature with respect to visitation and will be "modified by the Court based upon Defendant/Mother's progress in therapy." It appears here, too, a substantial change in circumstances is required. Dr. Pennington's argument therefore fails.

[6] Dr. Pennington next argues the trial court impermissibly restricted her visitation with the children. The trial court found Dr. Pennington "is not a fit nor proper person to exercise custody or unsupervised visitation with the minor children." The custody restricts her visitation as follows: "Pending further Orders of this Court, Defendant/Mother shall have no visitation with the minor children, except for therapeutic visitation with the children, if Defendant/Mother's therapist, as well as Dr. Curran and Ms. Duncan believe such therapeutic sessions are appropriate."

First, Dr. Pennington contends the order, "in effect, terminated" her right to visitation and any contact with her children. Therefore, she claims, the trial court was required and failed to apply the "clear, cogent, and convincing" evidentiary standard when finding Dr. Pennington unfit based on our decision in *Moore v. Moore,* 160 N.C. App. 569, 587 S.E.2d 74 (2003). Before a trial court may deny a parent "the right of reasonable visitation," the court is required to find that (1) the parent denied visitation is unfit to visit the child or (2) visitation is not in the best interests of the child. N.C. Gen. Stat. § 50-13.5(i) (2009). In *Moore,* this Court stated that the prohibition of *all* contact with a natural parent's child was analogous to a termination of parental rights. *Moore,* 160 N.C. App. at 573, 587 S.E.2d at 76. The Court reasoned that, in order to sustain a "total prohibition of visitation or contact" based on the unfitness prong of N.C. Gen. Stat. § 50-13.5(i), the trial court must find unfitness based on the clear, cogent, and convincing evidentiary standard that is applicable in termination of parental rights cases. *Id.* at 573-74, 587 S.E.2d at 76-77.

The trial court's order in this case plainly does not prohibit all visitation or contact because therapeutic visitation is permitted. Therefore, the trial court was not required to employ a heightened evidentiary standard. Accordingly, we also reject Dr. Pennington's argument that the court was required and failed to find Dr. Pennington unfit to exercise supervised visitation because the order clearly permits some form of supervised visitation.

[7] Dr. Pennington also maintains the trial court abandoned its duty to determine visitation by allowing medical professionals to discon-

tinue therapeutic visitation—the only form of visitation available to Dr. Pennington after the trial court entered its order. The custody order stated that it was in the best interests of the children to allow supervised visitation in the presence of the physician. The award of visitation rights is a judicial function. *In re Custody of Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971). And as a general rule, a trial court should hesitate in delegating decision-making authority. A custody order may not award exclusive control over the terms of visitation to the custodian. *Brewington v. Serrato*, 77 N.C. App. 726, 733, 336 S.E.2d 444, 449 (1985) (citing *In re Custody of Stancil*, 10 N.C. App. at 552, 179 S.E.2d at 849). For example, we have held that a trial court abdicated its role by allowing visitation "at such times as the parties may agree" because this allowed the custodian to deny all visitation by withholding his consent. *Id.* While our case law recognizes that some decision-making authority may be ceded to the parties with respect to visitation, it also reveals that an order is less likely to be sustained as judicially-imposed structure decreases and the decision-making party's unfettered discretion increases. *Compare In re Custody of Stancil* 10 N.C. App. at 552, 179 S.E.2d at 849 ("To give the custodian of the child authority to decide when, where and under what circumstances a parent may visit his or her child could result in a complete denial of the right and in any event would be delegating a judicial function to the custodian."), *with Woncik v. Woncik*, 82 N.C. App. 244, 250-51, 346 S.E.2d 277, 280-81 (1986) (upholding a custody order that required the custodian to "terminate" visitation under certain circumstances and initiate a hearing where the trial court would determine whether visitation should be terminated going forward).

Here, the trial court gave Dr. Pennington's and the boys' *therapists* control over the only type of supervised visitation available to Dr. Pennington. Because a neutral third party is vested with authority to control therapeutic visitation, the visitation arrangement does not present the problems inherent in custodian-controlled visitation. We approved a similar visitation scheme in *Cox v. Cox*, 133 N.C. App. 221, 515 S.E.2d 61 (1999). In *Cox*, a physician was required to supervise the defendant's visitation with her children. *Id.* at 230, 515 S.E.2d at 67. The order stated the physician could "suspend or terminate counseling, treatment, and supervised visitation if he determine[d] that the defendant [was] not progressing nor working honestly toward improvement." *Id.* at 230, 515 S.E.2d at 67-68. The physician was required to notify the trial court if he terminated counseling. *Id.* at 230, 515 S.E.2d at 68.

This Court concluded the physician "did not have the authority to end [the] defendant's visitation rights but did have the authority to terminate [the] defendant's counseling and treatment which included supervised visitation with the minor children." *Id.* at 230, 515 S.E.2d at 68. Considering the only form of visitation available to the *Cox* defendant was supervised visitation with the medical professionals, it appears *Cox* authorizes the authority bestowed on the physicians in this case. We conclude that, under the circumstances, the trial court did not err by vesting neutral decision makers, who are in the best position to evaluate the mental condition of Dr. Pennington and the children, with the authority to craft the details of an elastic treatment and visitation program for all three individuals.

5. Whether the trial court abused its discretion

[8] After careful review, we conclude the trial court abused its discretion when fashioning Dr. Pennington's therapy. Dr. Pennington is required by the 6 March 2009 order to acknowledge that Dr. Peters did not sexually abuse their children and accept as true the trial court's conclusion that she harmed her children. Thus, Dr. Pennington must force herself to believe that she implanted false images of sexual abuse in her children. Presumably, she must prove to a medical professional or counselor that she genuinely believes the trial court findings were correct before being certified as rehabilitated, which may be a prerequisite to obtaining significant visitation or any level of custody in the future.[6] We hold this is an unwarranted imposition under these facts. Our objection to this requirement is that it mandates Dr. Pennington and the therapist attain a standard based upon Dr. Pennington's beliefs rather than her behavior. It would have been appropriate to require Dr. Pennington to demonstrate to the court that she would not engage in any behavior that suggests to the children that they were sexually abused. We believe this is best achieved through non-disparagement requirements and prohibitions on discussing these matters with the children, which are enforceable through the contempt powers of the trial court, including incarceration. It was an abuse of discretion to require Dr. Pennington to change her beliefs and prove to a counselor that such a change has in fact occurred. We therefore vacate paragraph 5 of the decretal portion of the 6 March 2009 order ("Decree 5") and remand the order to the trial court to enter a new order based upon Dr. Pennington's and her

6. The order does not explicitly condition visitation and future custody on "rehabilitation," but the order suggests this is the case.

agents' ability to comply with existing court orders and demonstrate behavior that prevents harm to her children.

However, we note that Dr. Pennington's conduct placed the trial court in a difficult position. The court specifically ordered the parties not to disparage one another or to discuss the case with the children. It found, based on competent evidence, that Dr. Pennington willfully ignored these rulings, which were designed to protect the integrity of the judicial process and to protect the children from harm. The trial court likely concluded non-disparagement requirements and other tools would have been of little future value as a restraint on Dr. Pennington. The court's skepticism was justified, not only by Dr. Pennington's actions in taking the children to therapy with Dr. Tanis before a guardian *ad litem* was appointed, but also by her affidavits in which she documented her conversations with the children about the specific topics the court had restrained her from discussing with the children.

Nevertheless, we hold it was error to require Dr. Pennington prove to her therapists that her beliefs about the factual under-pinnings of the case had changed. While the trial court properly vested authority in medical professionals to determine when supervised visitation was appropriate, the court went too far in dictating the specifics of the therapists' work. Dr. Pennington's actual behavior—and not her subjective beliefs over what occurred in the case—should have been the critical focus for evaluating when visitation was appropriate.

B. Costs and Fees

[9] Dr. Pennington makes several arguments concerning the imposition of attorney's fees and various costs. First, she contends the trial court improperly assessed "equitable" costs against her in the form of the children's uninsured therapy costs. As part of the initial custody order, the court required Dr. Pennington to pay all uninsured therapy costs incurred on behalf of the children. The order described this portion of the order as a separate equitable remedy.

Dr. Pennington maintains this was error because, as this Court has previously stated, our courts cannot tax costs against a party on equitable grounds. *Cail v. Cerwin*, 185 N.C. App. 176, 186, 648 S.E.2d 510, 517 (2007). This argument lacks merit because it misconstrues the meaning of the term "costs." Our decisions rejecting the equitable imposition of costs refer to "taxable costs," *see, e.g, id.*, a term of art

that refers to "litigation-related expense[s] that the prevailing party is entitled to as a part of the court's award." *Black's Law Dictionary* 372 (8th ed. 2004). Uninsured therapy expenses are not taxable costs. Rather, they are awarded pursuant to a district court's ability to structure child support. Consequently, the trial court's order does not conflict with our decisions rejecting equitable awards of litigation-related costs. Dr. Pennington's argument therefore fails.

[10] Paragraph 8 of the decretal portion of the 20 May 2009 costs order ("Decree 8") requires Dr. Pennington to pay the law firm employed by Dr. Peters $266,657.50. The order states that $224,195.50 is derived from legal fees and $42,461.50 is derived from "expert consultation, testimony, and travel and other litigation-related expenses." Obviously, the trial court made an arithmetic error and awarded an additional $0.50, which we address below. The amount due accrues interest at a rate of six percent per annum. Dr. Pennington argues the attorney's fees awarded were unreasonable and unnecessary. The reasonableness and necessity of attorney's fees is reviewed for abuse of discretion. *See Hudson v. Hudson*, 299 N.C. 465, 473, 263 S.E.2d 719, 724 (1980).

Specifically, Dr. Pennington contends the evidence and findings do not support the award of fees charged by Sarah Brady, a member of Dr. Peters' trial counsel team. She claims there is no evidence in the record supporting the trial court's finding that Ms. Brady "has a reputation for diligence and competence as an attorney" and her hourly rate of $200.00 "is more than reasonable relative to attorneys of comparable experience and skill in the family bar." However, the trial court had ample opportunity to observe Ms. Brady at trial, which was sufficient to determine the reasonableness of her fee in comparison to attorneys of comparable experience and skill. *See Dyer v. State*, 331 N.C. 374, 378, 416 S.E.2d 1, 3 (1992) (stating that observing an attorney during trial was sufficient to judge the attorney's skill and the difficulty of the case); *cf. Simpson v. Simpson*, COA09-1131, 2011 WL 135539, at *6 (N.C. Ct. App. Jan. 18, 2011) ("[A] district court, considering a motion for attorneys' fees under N.C. Gen. Stat. § 50-13.6, is permitted, although not required, to take judicial notice of the customary hourly rates of local attorneys performing the same services and having the same experience."). We also believe the trial court had ample evidence to judge her reputation for diligence and competence.

[11] Dr. Pennington further contends the evidence and findings do not support the award of fees paid to Charles Porter and eleven other

attorneys that worked on this case. The trial court found that all legal fees Dr. Peters incurred were reasonable and necessary. The court also found that attorneys other than Jonathan Feit (also counsel for Dr. Peters) and Ms. Brady worked on this case. Based on its knowledge of these attorneys and a review of the fees, the trial court concluded their rates were reasonable in light of fees charged by similar attorneys in Mecklenburg County. Mr. Feit submitted detailed attorney's fees affidavits, which provided evidence of his associates' work product. *See Wiggins v. Bright*, 198 N.C. App. 692, 697, 679 S.E.2d 874, 877 (2009) (fee affidavit sufficient to support detailed findings in support of award). We believe the complexity of this case, the difficulty of litigation-related issues confronted by the attorneys, and the results obtained, among other things, support the trial court's findings. *See United Laboratories, Inc. v. Kuykendall*, 335 N.C. 183, 195, 437 S.E.2d 374, 381-82 (1993) (listing these and other factors as appropriate matters for a court to consider when awarding attorney's fees).

[12] Dr. Pennington's next argument with respect to costs is that the trial court fashioned an impermissible payment schedule and improperly ordered interest to accrue at a rate of six percent per annum. We fail to see how the trial court erred by requiring payment according to a set schedule. It does *not* "indenture[]" Dr. Pennington to Dr. Peters' counsel "for a minimum of [thirty] years" as she contends. She is free to satisfy the judgment in less than thirty years. The payment schedule creates an appropriate and necessary mechanism to ensure payment. The trial court did not abuse its discretion in this respect.

However, "interest on costs is expressly disallowed by statute." *City of Charlotte v. McNeely*, 281 N.C. 684, 696, 190 S.E.2d 179, 188 (1972). Therefore, we vacate the portion of the trial court's order contained in "Decree 8" imposing interest on costs. However, the portion of Decree 8 that sets the amount of attorney's fees to be paid by Dr. Pennington, remains undisturbed.

[13] Next, Dr. Pennington argues the trial court lacked statutory authority to tax the following costs: $3039.00 in copying fees, $60.11 in mileage reimbursements, $14.98 in long-distance telephone calls, $105.39 in postage fees, $168.25 in computerized research fees, and $19,253.00 in fees paid to an expert who Dr. Pennington claims was not subpoenaed and who did not testify at trial. The issue of what may be taxed as costs previously led to a split of authority in this Court. *See, e.g.*, James Edwin Griffin, III, Comment, *Murky Water: What Really Is Taxed as Court Costs in North Carolina?*, 32

Campbell L. Rev. 127 (2009) (explaining a split of authority exists in this Court, arguing for the "explicitly delineated approach," and imploring our Supreme Court to resolve the problem). There are two lines of cases: (1) the "reasonable and necessary" approach—which permits courts to determine what types of costs may be awarded—and (2) the "explicitly delineated" approach—which holds that N.C. Gen. Stat. § 7A-305 limits the types of costs that can be awarded. *Id.* at 130-31. Applying these lines of cases was problematic, particularly because the reasonable and necessary approach conflicted with Supreme Court precedent. *See McNeely*, 281 N.C. at 691, 190 S.E.2d at 185 ("The simple but definitive statement of the rule is: 'Costs, in this state, are entirely creatures of legislation, and without this they do not exist.'" (quoting *Clerk's Office v. Commissioners*, 121 N.C. 29, 30, 27 S.E. 1003, 1003 (1897))).

Fortunately, the General Assembly's 2007 amendment to N.C. Gen. Stat. § 6-20 resolved the dispute in favor of the explicitly delineated approach. The statute formerly stated that "[i]n other actions, costs may be allowed or not, in the discretion of the court, unless otherwise provided by law." Act of July 3, 2007, ch. 212, sec. 2, § 6-20, 2007 N.C. Sess. Laws 339, 339. The statute now reads as follows:

> In actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable ·or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes.

N.C. Gen. Stat. § 6-20 (2009). Section 7A-305(d), in turn, states that the expenses contained in subsection (d) "are complete and exclusive and constitute a limit on the trial court's discretion to tax costs pursuant to G.S. 6-20." N.C. Gen. Stat. § 7A-305(d) (2009). When read together, it is clear that costs require statutory authorization and that section 7A-305 or any other statute may authorize costs. Whether a trial court has properly interpreted the statutory framework applicable to costs is a question of law reviewed *de novo* on appeal. *See Jarrell v. Charlotte-Mecklenburg Hosp. Auth.*, —— N.C. App. ——, ——, 698 S.E.2d 190, 191 (2010). The reasonableness and necessity of costs is reviewed for abuse of discretion. *See id.*

If a category of costs is set forth in section 7A-305(d), " 'the trial court *is required to assess the item as costs.*'" *Springs v. City of Charlotte*, COA09-839, 2011 WL 135645, at *9 (N.C. Ct. App. Jan. 18,

PETERS v. PENNINGTON

[210 N.C. App. 1 (2011)]

2011) (quoting *Priest v. Safety-Kleen Sys., Inc.*, 191 N.C. App. 341, 343, 663 S.E.2d 351, 353 (2008)). Subsection (d)(11) therefore requires a trial court to assess as costs expert fees for time spent testifying at trial. *Id.* However, a trial court may tax expert witness fees as costs only when that witness is under subpoena. *Jarrell*, —— N.C. App. at ——, 698 S.E.2d at 193. In sum, before a trial court may assess expert witness testimony fees as costs, the testimony must be (1) reasonable, (2) necessary, and (3) given while under subpoena.

In its discretion, a trial court has the authority to award costs for a subpoenaed witness' time attending, but not testifying, at trial under N.C. Gen. Stat. 7A-314(d), as well as transportation costs under N.C. Gen. Stat. 7A-314(b). *Springs*, 2011 WL 135645, at *9 (citing N.C. Gen. Stat. § 7A-314(d); N.C. Gen. Stat. § 7A-314(b)). A trial court may not, however, assess as costs expert witness fees for preparation time. *Id.*

Our review of the record indicates $42,461.50 of the total costs amount the trial court ordered Dr. Pennington to pay to Dr. Peters' counsel can be attributed to costs other than attorney's fees. The trial court's order pertaining to costs lacks findings as to how these costs were incurred. Therefore, we vacate the portion of Decree 8 insofar as it awards $42,461.50 in litigation costs other than attorney's fees and remand for a hearing to determine how these litigation costs were incurred and whether they are authorized by statute. On remand, the trial court shall account for the additional $0.50.

C. Sanctions

[14] Ms. Burns, counsel for Dr. Pennington during the trial below, appeals the trial court's 29 May 2009 order imposing Rule 11 sanctions against her.

> The trial court's decision to impose or not to impose mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a) is reviewable *de novo* as a legal issue. In the *de novo* review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact are supported by a sufficiency of the evidence. If the appellate court makes these three determinations in the affirmative, it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under N.C.G.S. § 1A-1, Rule 11(a).

*Turner v. Duke Univ.*, 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). As in other cases where the trial court is responsible for making findings of fact, "[t]he trial court's findings of fact are conclusive on appeal if supported by competent evidence, even when the record includes other evidence that might support contrary findings." *Static Control Components, Inc. v. Vogler*, 152 N.C. App. 599, 603, 568 S.E.2d 305, 308 (2002). If the trial court correctly determines Rule 11 sanctions are appropriate, we review the specific sanctions imposed under an abuse of discretion standard. *Id.*

Rule 11 of the North Carolina Rules of Civil Procedure provides:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

N.C. R. Civ. P. Rule 11(a).

"There are three parts to a Rule 11 analysis: (1) factual sufficiency, (2) legal sufficiency, and (3) improper purpose." *Dodd v. Steele*, 114 N.C. App. 632, 635, 442 S.E.2d 363, 365 (1994). A violation of any part of the rule mandates sanctions. *Id.* In this case, the trial court concluded Ms. Burns violated all three. When determining factual sufficiency, a court must determine "(1) whether the plaintiff undertook a reasonable inquiry into the facts and (2) whether the plaintiff, after reviewing the results of his inquiry, reasonably believed that his position was well grounded in fact." *McClerin v. R-M Indus., Inc.*, 118 N.C. App. 640, 644, 456 S.E.2d 352, 355 (1995).

The trial court concluded the following factual allegations made by Ms. Burns in her post-trial motions had no factual support: (1) Dr. Pennington's counsel objected numerous times and stated, "the Court

needed to hear all of the evidence"; (2) on 17 February 2009, the trial court stated, before Dr. Pennington's direct testimony was complete, that "there was no further evidence that would impact the Court's decision one way or the other"; (3) on 18 February 2009, the trial court made a similar statement (again before Dr. Pennington's testimony was completed) at an in-chambers conference that Ms. Burns did not attend; (4) the trial court prevented one of Dr. Pennington's expert witnesses, Dr. Newberger, from being cross examined, requiring the court to strike the expert's direct testimony; (5) the trial court prevented several other witnesses from testifying; and (6) there was no fact or testimony that provided support for the restriction on Dr. Pennington's contact with her children or for the finding that Dr. Pennington instilled false images of abuse in her children. The trial court also found Ms. Burns cited cases lacking a common nucleus of operative fact to the matter at bar.

There are several misstatements of fact that justify the imposition of sanctions. On appeal, Ms. Burns states she remembers her co-counsel objecting at trial. She contends she was merely paraphrasing her co-counsel's objection when she claimed in her motion that objections were made on the basis that "the Court needed to hear all of the evidence." However, Ms. Burns concedes she cannot locate any such objection in the record. Her brief is vague as to whether she examined the transcript before or after filing her motion.

Both contingencies are unacceptable. If she discovered there was no objection in the record before filing the motion, the most reasonable interpretation is that she misrepresented the record. If there was any doubt as to the contents of the trial transcript, Ms. Burns should have indicated this was the case in her motion or otherwise brought it to the trial court's attention. Failing to examine the transcript before accusing the trial judge of bias, among other allegations, is equally dubious. She attempts to justify this oversight by explaining she sent her motion to Dr. Pennington "to ensure its accuracy." This is insufficient to remedy the problem under these facts—a lawyer should satisfy herself as to the contents of the record, rather than relying on her client.

Furthermore, we note that local counsel, Mr. Pollard, did not sign the motion and withdrew from representation before the hearing on the matters addressed by the motion. At oral argument, Ms. Burns indicated Mr. Pollard did not sign the document because she did not have the opportunity to confer with him. She also indicated there

might be a possibility he would have refused to do so because of a fee dispute with Dr. Pennington. But considering the gravity of the document, it would have been advisable to confer directly with her co-counsel on this matter. In sum, we conclude Ms. Burns either failed to make an adequate inquiry in these factual allegations or did not reasonably believe the allegations were well-grounded in fact. Consequently, we decline to address whether the trial court was justified in imposing sanctions on the other grounds described in the order.

We hold the trial court correctly decided to sanction Ms. Burns and that the specific sanction imposed did not constitute an abuse of discretion.[7]

## IV. Conclusion

We vacate Decree 5 of the 6 March 2009 custody order. On remand, the trial court shall reform the therapeutic requirements placed on Dr. Pennington in accordance with this opinion. We vacate finding of fact 30 of the 6 March 2009 order insofar as it indicates DSS substantiated allegations that Dr. Pennington abused her children. The portion of finding of fact 30 indicating DSS substantiated neglect remains undisturbed on remand. We vacate Decree 8 of the 20 May 2009 costs order insofar as it awards $42,461.50 in non-attorney's-fees costs. On remand, the trial court shall make additional findings of fact regarding these costs and determine whether they are authorized by statute. We vacate the portion of the 20 May 2009 order requiring Dr. Pennington to pay interest on attorney's fees and other costs. On remand, the trial court shall account for the additional $0.50 erroneously added to the total costs award. We affirm the 29 May 2009 order imposing Rule 11 sanctions.

Affirmed in part, vacated in part, and remanded.

Judges HUNTER, Robert C., and WALKER concur.

---

7. We note, however, that it would have been preferable if the GAL had refrained from filing for Rule 11 sanctions. In hotly contested matters such as this one, it is critical that the GAL remain as neutral as possible. With the trial court and counsel for Dr. Peters moving for sanctions, it was unnecessary for the GAL to file his own motion.