FAIRWAY OUTDOOR ADVERTISING, A DIVISION OF MCC OUTDOOR, LLC
AND MCC OUTDOOR, LLC, PETITIONERS
V.
THE TOWN OF CARY, NORTH CAROLINA AND THE TOWN OF CARY ZONING
BOARD OF ADJUSTMENT, RESPONDENTS

No. COA12-518

Filed 5 March 2013

**1. Appeal and Error—appealability—untimely appeal—non-conforming outdoor advertising sign**

Petitioner Fairway Outdoor Advertising's (Fairway) appeal in a zoning case of compliance issues with its outdoor advertising

sign pursuant to the Town of Cary's land development ordinance (LDO) § 10.5.2 was not timely. Fairway did not appeal the contested action regarding its non-conforming sign until almost a year after it had received official notice that it was subject to LDO § 10.5.2. Notice of appeal was required within 30 days pursuant to LDO § 3.21.3(B).

## 2. Penalties, Fines, and Forfeitures—civil penalties—non-conforming outdoor advertising sign

Based on the erroneous conclusion that petitioner Fairway Outdoor Advertising timely appealed the issue of its outdoor advertising sign's compliance with the town's land development ordinance, the zoning case was remanded for the trial court to reconsider the issue of civil penalties.

## 3. Zoning—outdoor advertising sign—unlisted use—discretionary decision

The Planning Director's discretionary decision in a zoning case to not approve petitioner's outdoor advertising sign as an "unlisted use" under LDO § 12.3.1(C)(1) was not error because the Planning Director was not required to do so.

Appeal by respondents from order and judgment entered 28 November 2011 by Judge W. Osmond Smith, III in Wake County, Superior Court. Heard in the Court of Appeals 13 December 2012.

*Wilson & Ratledge, PLLC, by Reginald B. Gillespie, Jr., for petitioners-appellees.*

*The Brough Law Firm, by Michael B. Brough and G. Nicholas Herman, for respondent-appellants.*

STROUD, Judge.

The Town of Cary, North Carolina and the Town of Cary Zoning Board of Adjustment appeal the trial court's 28 November 2011 order and judgment. For the following reasons, we reverse in part and remand in part.

### I. Background

The trial court briefly summarized the background of this case and its decision in its memorandum of decision:

This matter involves an outdoor advertising sign (the "Sign", its "Sign", or "Fairway's Sign") located at

844 East Chatham Street, Cary, Wake County, North Carolina. Petitioners Fairway Outdoor Advertising, a division of MCC Outdoor, LLC and MCC Outdoor, LLC (collectively "Fairway") own the Sign. Fairway sought review and reversal of the ZBOA's March 26, 2008, "Resolution Deciding Appeals of Fairway Outdoor Advertising" (the "ZBOA's Decision") relating to the Sign. Fairway asserts the ZBOA erred in concluding that the continued existence of Fairway's Sign is a violation of the Town of Cary Land Development Ordinance (the "LDO"), that the Sign must be removed, that Fairway must pay civil penalties for such violation, and that Fairway is not entitled to approval of its Sign as an "Unlisted Use" under the LDO. Respondent Town of Cary, North Carolina (the "Town") asserts that the foregoing conclusions by the ZBOA were correct, but contends that the ZBOA erroneously concluded that Fairway timely appealed the Town's determination that Fairway's Sign is a violation of the LDO and must be removed.

As set forth below, the Court has determined that the ZBOA correctly concluded that Fairway timely appealed from the Town's determination that Fairway's Sign is a violation of the LDO and must be removed. Therefore, as to the ZBOA's conclusion that Fairway's appeal was timely, the ZBOA's Decision is affirmed. However, the Court has determined that the ZBOA's conclusions that Fairway's Sign is a violation of the LDO and must be removed, that Fairway must pay civil penalties for such violation, and that Fairway is not entitled to approval of its application for an "Unlisted Use" under the LDO are erroneous. With respect to these conclusions, the ZBOA's Decision is reversed.

The Town of Cary, North Carolina and the Town of Cary Zoning Board of Adjustment ("Cary") appealed.

## II. Timeliness of Appeal Regarding Sign Compliance

[1] Cary first contends that Fairway's initial appeal of the Town's determination that its sign was not in compliance was untimely. "Generally, municipal ordinances and statutes enacted by the legislature are to be construed according to the same rules." *Clark v. City*

*of Charlotte,* 66 N.C. App. 437, 439, 311 S.E.2d 71, 72 (1984). Thus, we turn to our law regarding construing statutes. *See id.*

> Questions of statutory interpretation are ultimately questions of law for the courts and are reviewed *de novo.*
>
> . . . .
>
> Statutory interpretation begins with the cardinal principle of statutory construction that the intent of the legislature is controlling. In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish. Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain and definite meaning of the language. If the language is ambiguous or unclear, the reviewing court must construe the statute in an attempt not to defeat or impair the object of the statute if that can reasonably be done without doing violence to the legislative language.

*Dayton v. Dayton,* ___ N.C. App, ___, ___, 725 S.E.2d 439, 442 (2012) (citations, quotation marks, ellipses, and brackets omitted). Furthermore, "[o]ur courts have consistently held that statutes dealing with the same subject matter must be construed *in pari materia,* and harmonized, if possible, to give effect to each[.]" *Dougherty Equip. v. M.C. Precast Concrete,* ___ N.C. App. ___, ___, 711 S.E.2d 505, 507 (2011) (citation and quotation marks omitted).

The binding, uncontested facts as found by the trial court state that "[o]n June 23, 2006, one week before expiration of the amortization period, the Town sent Fairway the first official notice that the Town considered Fairway's Sign to be subject to . . . LDO § 10.5.2." *See Peters v. Pennington,* ___ N.C. App. ___, ___, 707 S.E.2d 724, 733 (2011) ("Unchallenged findings of fact are binding on appeal.") In its recitation of the facts the court names LDO § 10.5.2 at least six times as the ordinance at issue between the parties. Despite these findings, when determining whether Fairway made a timely appeal the trial court relies on LDO Chapters 9 and 11, and does not refer to LDO Chapter 10.

LDO Chapter 9 is entitled "SIGNS[.]" *See* Cary, N.C., Land Development Ordinance ch. 9 (2003).[1] LDO § 9.13 entitled "VIOLATIONS AND ENFORCEMENT[,]" provides that "[v]iolations of this chapter and enforcement procedures are addressed in Chapter 11." LDO § 9.13. Indeed, LDO Chapter 11 entitled "ENFORCEMENT" has specific provisions regarding "General Appeals of Enforcement Decisions[.]" *See* LDO ch. 11; § 11.2.2. Thus, LDO Chapters 9 and 11 would appear to be potentially applicable to the issue before us. *See* LDO chs. 9, 11.

Nonetheless, the dispute between Fairway and Cary arises not from Chapter 9 but from LDO § 10.5.2 entitled "Nonconforming Pole Signs[.]"[2] *See* LDO § 10.5.2. This is confirmed not only by the uncontested facts, but also by the trial court's order and judgment which twice determines the merits of this case based upon LDO § 10.5.2 without mention of any other provision on this issue. Neither party has challenged the applicability of LDO § 10.5.2, and this ordinance provides,

> Signs or signage which meet the definition of a pole sign (including billboards) in this Ordinance are considered to be nonconforming, and shall be removed or replaced with signage which conforms to the requirements of this Ordinance no later than July 1, 2006. Existing lawfully-placed signs associated with an approved Uniform Sign Plan shall be exempt from this provision. Owners of record for such signs shall be notified of the nonconformity via mailed notice.

LDO § 10.5.2. LDO § 10.5.2 is the basis for the Town's demand for removal of the sign. But LDO Chapter 10 has no provision regarding appeals from a decision that a pole sign is nonconforming pursuant to LDO § 10.5.2. In fact, LDO Chapter 10 does not contain any appeal provisions.

Because LDO Chapter 10 has no appeal provision, and no direction to handle appeals under LDO Chapter 11, LDO Chapter 11 does not control an issue regarding LDO § 10.5.2. LDO Chapter 9 specifi-

---

1. Hereinafter cited as "LDO" and the applicable provision.

2. The trial court also found that "[t]he Town contends that Fairway's Sign violated LDO § 9.4.1, characterizing Fairway's sign as a pole sign, off-site sign, and billboard[;]" this statement is a recitation of the Town's argument and not a finding by the trial court. The trial court did however find that LDO § 10.5.2 is the provision upon which the facts and the Town's "first official notice" were based.

cally requires that for issues arising under LDO Chapter 9 appeals must be taken pursuant to LDO Chapter 11. *See* LDO § 9.13. However, because LDO Chapter 10 does not have a specific provision regarding appeals, issues arising under LDO Chapter 10 are governed by the general appeals process provided in LDO Chapter 3. Such an interpretation is the clearest way in which to read LDO Chapters 9 and 10, *in pari materia, see Dougherty Equip.,* ___ N.C. App. at ___, 711 S.E.2d at 507; Black's Law Dictionary 862 (9th ed. 2009) ("On the same subject; relating to the same matter. It is a canon of construction that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject."), because if the LDO specifically directs that appeals from LDO Chapter 9 must be handled under LDO Chapter 11, and LDO Chapter 10 has no such provision, we must assume that appeals arising from LDO Chapter 10 are controlled by LDO Chapter 3, the general appeal provision. Had the drafters of the LDO intended that LDO Chapter 10 appeals be handled by the LDO Chapter 11 process they logically would have also placed a provision within LDO Chapter 10 directing us to LDO Chapter 11 just as they did in LDO Chapter 9.

Turning to LDO Chapter 3, entitled "REVIEW AND APPROVAL PROCEDURES[:]"

### 3.21      APPEALS OF ADMINISTRATIVE DECISIONS

### 3.21.1    Purpose and Scope

Appeals to the Zoning Board of Adjustment from the decisions of the Town's administrative staff are allowed under this Ordinance. It is the intention of this Section that all questions arising in connection with the interpretation and enforcement of this Ordinance shall be presented first to the appropriate administrative officer in the Engineering or Planning Department, that such questions shall be presented to the Zoning Board of Adjustment only on appeal from the decisions of that department, and that recourse from the decision of the Zoning Board of Adjustment shall be to the courts. It is further the intention of this Section that the duties of the Town Council in connection with this Ordinance shall not include the hearing or passing upon disputed questions that may arise in connection with the enforcement thereof.

3.21.2    Decisions That May Be Appealed

Any order, requirement, permit, decision, determination, refusal, or interpretation made by any administrative officer in interpreting and/or enforcing the provisions of this Ordinance may be appealed to the Zoning Board of Adjustment, unless otherwise provided in this Ordinance.

3.21.3    Filing of Appeal; Effect of Filing

(A)    An appeal to the Zoning Board of Adjustment may be brought by any person, firm, corporation, office, department, board, bureau or commission aggrieved by the order, requirement, permit, decision, or determination that is the subject of the appeal.

(B)    An application for an appeal shall be filed with the Planning Department. Once the application is complete, the Planning Department shall schedule the appeal for consideration at a public hearing before the Zoning Board of Adjustment. The Department and the administrative officer from whom the appeal is taken shall transmit to the Zoning Board of Adjustment all applications and other records pertaining to such appeal. The application shall be filed no later than 30 days after the date of the contested action.

LDO § 3.21.

LDO Chapter 3 is the general provision for appeals as it plainly states that "*[a]ny* order, requirement, permit, decision, determination, refusal, or interpretation made by any administrative officer in interpreting and/or enforcing the provisions of this Ordinance may be appealed to the Zoning Board of Adjustment, *unless otherwise provided in this Ordinance.*" LDO § 3.21.2 (emphasis added). LDO Chapter 9 specifically provides otherwise as it directs that certain appeals be handled pursuant to LDO Chapter 11. *See* LDO § 9.13. LDO Chapter 10 does not "otherwise provide[]" for an alternative route to appeal, and thus LDO Chapter 3 controls. LDO § 3.21.2.

LDO § 3.21.3 requires that "application shall be filed no later than 30 days after the date of the contested action." LDO 3.21.3(B). The LDO does not define "contested action[,]" and thus we must consider its plain meaning. *In re R.L.C.*, 361 N.C. 287, 292, 643 S.E.2d 920, 923 ("When the language of a statute is clear and without ambiguity, it is

the duty of this Court to give effect to the plain meaning of the statute[.]"), *cert. denied*, 552 U.S. 1024, 169 L.Ed. 2d 396 (2007). While there is some disagreement about when this "contested action" began, LDO § 3.21.3(B), the trial court found, and no party contests, that "Fairway first became aware, on its own accord" of LDO § 10.5.2 in January or February 2006; at this point Fairway was obviously aware there was a compliance issue with its sign as it then "requested an opportunity to discuss [LDO § 10.5.2] with the Town . . . . and what needed to be done in order to bring Fairway's Sign into compliance with the LDO." Fairway's own discovery of its sign's nonconformity did not constitute proper notice to create a "contested action[,]" *id.*, since the LDO also requires a "mailed notice[,]" which would require some form of written notice. But the trial court also found that "[o]n June 23, 2006, . . . the Town sent Fairway the first official notice that the Town considered Fairway's Sign to be subject to . . . LDO § 10.5.2" and thus "nonconforming[.]" *Id.* So no later than 23 June 2006, the "contested action" regarding Fairway's sign had occurred. *Id.* However, Fairway did not appeal this "contested action" regarding its non-conforming sign until 6 June 2007; *id.*, almost a year after it had received official notice that it was subject to LDO § 10.5.2. Notice of appeal was required within 30 days pursuant to LDO § 3.21.3(B), so Fairway's appeal as to the compliance issues with its sign pursuant to LDO § 10.5.2 was not timely. *See id.*

### III. Civil Penalties

**[2]** Because the trial court found Fairway's appeal regarding the sign's compliance to be timely, it ultimately addressed this case on the merits and agreed with Fairway; this resulted in the conclusion that no civil penalties should be assessed against Fairway. As we have concluded that Fairway did not timely appeal the issue of the sign's compliance, we remand for the trial court to reconsider the issue of civil penalties in light of our opinion.

### IV. Unlisted Use

**[3]** Lastly, the trial court determined that Fairway's sign should be approved as an "unlisted use" pursuant to LDO § 12.2.1 which provides in pertinent part, "Where a particular use category or use type is not specifically allowed under this Ordinance, the Planning Director may permit the use category or type upon a finding that the criteria of subsection (2) below are met." LDO § 12.3.1(C)(1). In its memorandum of decision the trial court engages in a lengthy analysis of the relevant provisions to explain why an "unlisted use" should

have been allowed. However, the trial court's decision ignores the plain language of LDO § 12.3.1(C)(1) which states that "the Planning Director *may* permit" an unlisted use, not that the Planning Director *must*. *Id*. (emphasis added). LDO § 12.2.10 provides that "The words 'may' and 'should' are permissive in nature." LDO § 12.2.10. Accordingly, the LDO vests the Planning Director with discretion to determine when an "unlisted use" should be allowed, based upon the factors set forth in the ordinance. *See* LDO § 12.3.1(C)(1). We perceive no basis for the determination that the Planning Director abused his discretion under the LDO. The Planning Director's discretionary decision not to approve the sign for an "unlisted use" is not error as the Planning Director was not required to do so. LDO § 12.3.1(C)(1); *see* LDO § 12.2.10.

## V. Conclusion

We reverse that portion of the order and judgment determining that Fairway's appeal regarding compliance was timely, all provisions regarding the merits that were dependent on the timeliness of the appeal, and the determination that Fairway's sign must be permitted as an "unlisted use." We remand for further consideration of the issue of civil penalties in light of this opinion.

REVERSED in part and REMANDED in part.

Judge STEELMAN concurs.

Judge, HUNTER, JR., Robert N. concurs in result only.